# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

RECEIVED
SDNY PRO SE OFFICE

2022 MAY 27  AM 10: 22

Illia Kornea
_____

Octavian Kecenovici
_____
Write the full name of each plaintiff.

_____CV_____
(Include case number if one has been
assigned)

-against-

Jeffrey A. Miller
_____
Patricia Miller
_____

Ahmed Raed
_____

_____
Write the full name of each defendant. If you need more
space, please write "see attached" in the space above and
attach an additional sheet of paper with the full list of
names. The names listed above must be identical to those
contained in Section II.

# COMPLAINT

Do you want a jury trial?
☐ Yes   ☑ No

---

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore *not* contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include *only*: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

---

Rev. 1/9/17

## I.   BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☐   **Federal Question**

☑   **Diversity of Citizenship**

## A.   If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?
Complaint is attached.

_____

_____

_____

_____

## B.   If you checked Diversity of Citizenship

### 1.   Citizenship of the parties

Of what State is each party a citizen?

The plaintiff , ___Jeffrey Anthony Miller, Patricia Miller, Ahmed Raed___ , is a citizen of the State of
                                 (Plaintiff's name)

California
_____
(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____.

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

Page 2

If the defendant is an individual:

The defendant, Jeffrey A. Miller, Patricia Miller, Ahmed Raed , is a citizen of the State of

(Defendant's name)

# California

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

If the defendant is a corporation:

The defendant, _____, is incorporated under the laws of

the State of _____

and has its principal place of business in the State of _____

or is incorporated under the laws of (foreign state) _____

and has its principal place of business in _____.

If more than one defendant is named in the complaint, attach additional pages providing information for each additional defendant.

## II. PARTIES

### A. Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

# Illia                                    Kornea

First Name                Middle Initial        Last Name

# 6314 Fernwood Ave

Street Address

# Bensalem                        Pennsylvania  19020

County, City                          State          Zip Code

# 347-246-3798                  ikornea@gmail.com

Telephone Number                      Email Address (if available)

## B. Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1:

| Jeffrey | Miller | |
|---|---|---|
| First Name | Last Name | |

Owner of RADRELAX LLC & FIBERH LLC

Current Job Title (or other identifying information)

9881 6th Street suite 206 Rancho Cucamanga CA 91730

Current Work Address (or other address where defendant may be served)

| 1304 E. Dexter St  Covina | California | 91724 |
|---|---|---|
| County, City | State | Zip Code |

Defendant 2:

| Patricia | Miller | |
|---|---|---|
| First Name | Last Name | |

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

| 1304 E. Dexter St Covina | California | 91724 |
|---|---|---|
| County, City | State | Zip Code |

Defendant 3:

| Ahmed | Raed | |
|---|---|---|
| First Name | Last Name | |

CEO RADRELAX LLC California Branch

Current Job Title (or other identifying information)

9881 6th Street Suite 206

Current Work Address (or other address where defendant may be served)

| Rancho Cucamanga | CA | 91730 |
|---|---|---|
| County, City | State | Zip Code |

Defendant 4:

_____
First Name                    Last Name

_____
Current Job Title (or other identifying information)

_____
Current Work Address (or other address where defendant may be served)

_____
County, City               State          Zip Code

## III. STATEMENT OF CLAIM

Place(s) of occurrence:  **Complaint attached**
_____

Date(s) of occurrence:  **04/15/2019**
_____

## FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

Complaint is attached
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

## IV. RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

## V.  PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| 05/23/2022 | | Kornea |
|---|---|---|
| Dated | | Plaintiff's Signature |
| Illia | | Kornea |
| First Name | Middle Initial | Last Name |
| 6314 Fernwood Ave | | |
| Street Address | | |
| Bucks | Pennsylavania | 19020 |
| County, City | State | Zip Code |
| 215-757-3327 | ikornea@gmail.com | |
| Telephone Number | Email Address (if available) | |

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☑ Yes   ☐ No

> If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

**United States District Court**
**Southern District of New York**

# Pro Se (Nonprisoner) Consent to Receive Documents Electronically

Parties who are not represented by an attorney and are not currently incarcerated may choose to receive documents in their cases electronically (by e-mail) instead of by regular mail. Receiving documents by regular mail is still an option, but if you would rather receive them only electronically, you must do the following:

1. Sign up for a PACER login and password by contacting PACER[1] at www.pacer.uscourts.gov or 1-800-676-6856;

2. Complete and sign this form.

If you consent to receive documents electronically, you will receive a Notice of Electronic Filing by e-mail each time a document is filed in your case. After receiving the notice, you are permitted one "free look" at the document by clicking on the hyperlinked document number in the e-mail.[2] Once you click the hyperlink and access the document, you may not be able to access the document for free again. After 15 days, the hyperlink will no longer provide free access. Any time that the hyperlink is accessed after the first "free look" or the 15 days, you will be asked for a PACER login and may be charged to view the document. For this reason, *you should print or save the document during the "free look" to avoid future charges.*

## IMPORTANT NOTICE

Under Rule 5 of the Federal Rules of Civil Procedure, Local Civil Rule 5.2, and the Court's Electronic Case Filing Rules & Instructions, documents may be served by electronic means. If you register for electronic service:

1. You will no longer receive documents in the mail;

2. If you do not view and download your documents during your "free look" and within 15 days of when the court sends the e-mail notice, you will be charged for looking at the documents;

3. This service does *not* allow you to electronically file your documents;

4. It will be your duty to regularly review the docket sheet of the case.[3]

---

[1] Public Access to Court Electronic Records (PACER) (www.pacer.uscourts.gov) is an electronic public access service that allows users to obtain case and docket information from federal appellate, district, and bankruptcy courts, and the PACER Case Locator over the internet.

[2] You must review the Court's actual order, decree, or judgment and not rely on the description in the email notice alone. *See* ECF Rule 4.3

[3] The docket sheet is the official record of all filings in a case. You can view the docket sheet, including images of electronically filed documents, using PACER or you can use one of the public access computers available in the Clerk's Office at the Court.

# CONSENT TO ELECTRONIC SERVICE

I hereby consent to receive electronic service of notices and documents in my case(s) listed below. I affirm that:

1.  I have regular access to my e-mail account and to the internet and will check regularly for Notices of Electronic Filing;

2.  I have established a PACER account;

3.  I understand that electronic service is service under Rule 5 of the Federal Rules of Civil Procedure and Rule 5.2 of the Local Civil Rules, and that I will no longer receive paper copies of case filings, including motions, decisions, orders, and other documents;

4.  I will promptly notify the Court if there is any change in my personal data, such as name, address, or e-mail address, or if I wish to cancel this consent to electronic service;

5.  I understand that I must regularly review the docket sheet of my case so that I do not miss a filing; and

6.  I understand that this consent applies only to the cases listed below and that if I file additional cases in which I would like to receive electronic service of notices of documents, I must file consent forms for those cases.

**Civil case(s) filed in the Southern District of New York:**

**Note:** This consent will apply to all cases that you have filed in this court, so please list all of your pending and terminated cases. For each case, include the case name and docket number (for example, John Doe v. New City, 10-CV-01234).

_____

_____

Kornea  Illia
Name (Last, First, MI)

6314 Fernwood        Bensalem          Pennsylvania  19020
Address                    City              State            Zip Code

347-246-3798                    ikornea@gmail.com
Telephone Number                   E-mail Address

05/23/2022
Date                                    Signature

**Return completed form to:**

Pro Se Intake Unit (Room 200)
500 Pearl Street
New York, NY 10007

**United States District Court**
**Southern District of New York**

Illia Kornea
6314 Fernwood Ave
Bensalem, PA [19020]

Case No.: _____

Illia Kornea and Octavian Kecenovici
Plaintiffs

Complaint for foreclosure of
Agriculture Lien by Judicial Process.

Vs.

Jeffrey and Patricia Miller, Ahmed Raed
Defendants and
Does 1-20 Et al.

_____

### AFFIDAVIT IN SUPPORT OF VERIFIED COMPLAINT

Plaintiffs being of the age of majority, competent and of sound mind, with full knowledge, declares and states the following facts under penalty of perjury; COMES NOW Illia Kornea and Octavian Kecenovici, Plaintiffs in the above styled and numbered complaint in propria persona and files this Federal, Common Law, Maritime Claim/Complaint against Defendants; Law firm of Jeffery Miller and co-defendants Patricia Miller, and Ahmed Raed in support thereof would show unto the court the following evidence and causes of action by affidavit, including matters and facts.

### STATEMENT OF CASE

This is a Complaint for foreclosure of an Agricultural Lien by Judicial Process under Article 9 § 9601 et seq., that is in default and subject to foreclosure under Article 9 § 9601 by Judicial Process for Breach of Contract, Miller acted in an unethical manner in bad faith under *New York Law General Business Law Chapter 20 Article 22A § 349* by breach of contract and failure to make payments according to the terms of conditions/agreement of said contract. The terms and conditions being $90.000.00 to approximately $120,000.00 monthly for a period of 13 months totaling $1,523,750.00. Mr. Miller failing to meet contractual agreement and obligation paid Plaintiffs only $43,650.00 within the 13 month time-period, falling short of said agreement/obligation by $1, 480,100.00 (see EXHIBIT 2 – copy of payment via 3 checks total amount of $32,025.00). The amount of the lien is $1,523,750.00 plus 9% percent interest in lawful money, plus itemized interest totaling $2,523,750.00. Under Section 5001 of New York's Civil Practice Law and Rules provides that a plaintiff can recover pre-judgment interest at 9%.

1

The Laws of New York
Consolidated Laws of New York
CHAPTER 20
General Business
ARTICLE 22-A
Consumer Protection From Deceptive Acts and Practices
SECTION 349
Deceptive acts and practices unlawful
General Business (GBS) CHAPTER 20, ARTICLE 22-A
§ 349. Deceptive acts and practices unlawful. (a) Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.

(b) Whenever the attorney general shall believe from evidence satisfactory to him that any person, firm, corporation or association or agent or employee thereof has engaged in or is about to engage in any of the acts or practices stated to be unlawful he may bring an action in the name and on behalf of the people of the state of New York to enjoin such unlawful acts or practices and to obtain restitution of any moneys or property obtained directly or indirectly by any such unlawful acts or practices. In such action preliminary relief may be granted under article sixty-three of the civil practice law and rules.

(c) Before any violation of this section is sought to be enjoined, the attorney general shall be required to give the person against whom such proceeding is contemplated notice by certified mail and an opportunity to show in writing within five business days after receipt of notice why proceedings should not be instituted against him, unless the attorney general shall find, in any case in which he seeks preliminary relief, that to give such notice and opportunity is not in the public interest.

(d) In any such action it shall be a complete defense that the act or practice is, or if in interstate commerce would be, subject to and complies with the rules and regulations of, and the statutes administered by, the federal trade commission or any official department, division, commission or agency of the United States as such rules, regulations or statutes are interpreted by the federal trade commission or such department, division, commission or agency or the federal courts.

(e) Nothing in this section shall apply to any television or radio broadcasting station or to any publisher or printer of a newspaper, magazine or other form of printed advertising, who broadcasts, publishes, or prints the advertisement.

(f) In connection with any proposed proceeding under this section, the attorney general is authorized to take proof and make a determination of the relevant facts, and to issue subpoenas in accordance with the civil practice law and rules.

(g) This section shall apply to all deceptive acts or practices declared to be unlawful, whether or not subject to any other law of this state, and shall not supersede, amend or repeal any other law of this state under which the attorney general is authorized to take any action or conduct any inquiry.

(h) In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

(j) Notwithstanding any law to the contrary, all monies recovered or obtained under this article by a state agency or state official or employee acting in their official capacity shall be subject to subdivision eleven of section four of the state finance law.

**Admiralty: An Overview**

Admiralty law or maritime law is the distinct body of law (both substantive and procedural) governing navigation and shipping. Topics associated with this field in legal reference works may include: shipping; navigation; waters; commerce; seamen; towage; wharves, piers, and docks; insurance; maritime liens; canals; and recreation. Piracy (ship hijacking) is also an aspect of admiralty.

The courts and Congress seek to create a uniform body of admiralty law both nationally and internationally in order to facilitate commerce. The federal courts derive their exclusive jurisdiction over this field from the

Judiciary Act of 1789 and from Article III, § 2 of the U.S. Constitution. Congress regulates admiralty partially through the Commerce Clause. American admiralty law formerly applied only to American tidal waters. It now extends to any waters navigable within the United States for interstate or foreign commerce. In such waters admiralty jurisdiction includes maritime matters not involving interstate commerce, including recreational boating.

Admiralty law in the United States developed from the British admiralty courts present in most of the American colonies. These courts functioned separately from courts of law and equity. With the Judiciary Act, though, Congress placed admiralty under the jurisdiction of the federal district courts. Although admiralty shares much in common with the civil law, it is separate from it. Common law does not act as binding precedent on admiralty courts, but it and other law may be used when no law on point is available.

Parties subject to admiralty may not contract out of admiralty jurisdiction, and states may not infringe on admiralty jurisdiction either judicially or legislatively. Since admiralty courts, however, are courts of limited jurisdiction (which does not extend to non-maritime matters), 28 USC § 1333(1), the "Savings to Suitors Clause," does provide for concurrent state jurisdiction so that non-admiralty remedies will not be foreclosed. Moreover, state courts may have jurisdiction where the matter is primarily local.

Under admiralty, the ship's flag determines the source of law. For example, a ship flying the American flag in the Persian Gulf would be subject to American admiralty law; and a ship flying a Norwegian flag in American waters will be subject to Norwegian admiralty law. This also applies to criminal law governing the ship's crew. But the ship must be flying the flag legitimately; that is, there must be more than insubstantial contact between the ship and its flag, in order for the law of the flag to apply. American courts may refuse jurisdiction where it would involve applying the law of another country, although in general international law does seek uniformity in admiralty law.

Just as the Federal Rules of Civil Procedure placed law and equity under the same jurisdiction in 1938, the 1966 rules subsumed admiralty. Nonetheless, the Supplemental Admiralty Rules take precedence over the Federal Rules of Civil Procedure in the event of conflict between the two.

This is an in REM complaint under supplementary Rule C, against Defendants

<u>STATEMENT OF JURISDICTION</u>

1.United States District Court Southern District of New York - Court has jurisdiction based on

diversity of citizenship, and Federal  jurisdiction under 28 USC §§ 1331 and 1332,  Personal Jurisdiction and

Venue under 18 USC § 2334,  and under the "JV" contract paragraph 13 " This Agreement shall be governed

by and construed in accordance with the laws of New York and all disputes heard in New York City by Jeffrey

Miller.

_This case involves a **posteriori** assumption and is an assumption that is presumed to be true without any assessment of the facts or without further proof._  *A posteriori* refers to the reasoning that stems from the observation of known facts or past events, rather than the making of an *a priori* assumption or prediction, i.e. before conducting such observation.

## JUDICIAL POWER

The District Court of the United States is vested with judicial power under  Article III  Section 2 of the Constitution of the United States of America.  The Judicial Power shall extend to all cases, in law and equity, arising under this Constitution, the laws of the United States, and treaties made, or which shall be made, under their authority;--to all cases affecting ambassadors, other public ministers and consuls;--to all cases of admiralty and maritime jurisdiction;--to controversies to which the United States shall be a party;--to controversies between two or more states;--between a state and citizens of another state;--between citizens of different states;--between citizens of the same state claiming lands under grants of different states, and between a state, or the citizens thereof, and foreign states, citizens or subjects.

II.                                    ## ORIGINAL JURISDICTION

TITLE 28 > PART IV > CHAPTER 85 > § 1333
§ 1333. **Admiralty, Maritime and prize cases**

The district courts shall have original jurisdiction, exclusive of the courts of the States, of:

(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

(2) Any prize brought into the United States and all proceedings for the condemnation of property taken as prize.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiffs requests:  Judgment in the amount of $2,523,750.00 still due and owing from Defendants to Plaintiffs that Defendant's above-described collateral and the real property to be sold and the proceeds to be applied to plaintiff's lien.

(a)  That Plaintiff be awarded costs of suit and;

That the court grant Plaintiffs such other and further relief as it deems just by the nature of this cause may require.

4

(b) Orders on condition of judgment the court orders Jeffrey Miller and Patricia Miller to disclose all real and personal property, tangible or intangible, hidden and public accounts which Jeffrey Miller and Patricia Miller has under his/her control.

III.   **THIS CASE INVOLVES THE FEDERAL COMMON LAW OF ADMIRALTY; WITH MARITIME RULES GOVERNING THIS COMPLAINT:**

Rule 9. Pleading Special Matters

(a) Capacity or Authority to Sue; Legal Existence.

(1) In General.

Except when required to show that the court has jurisdiction, a pleading need not allege: (A) a party's capacity to sue or be sued;

(B) a party's authority to sue or be sued in a representative capacity; or

(C) the legal existence of an organized association of persons that is made a party.

(2) Raising Those Issues.

To raise any of those issues, a party must do so by a specific denial, which must state any supporting facts that are peculiarly within the party's knowledge.

(b) Fraud or Mistake; Condition of Mind. In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

(c) Conditions Precedent.

In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed. But when denying that a condition precedent has occurred or been performed, a party must do so with particularity.

(d) Official Document or Act.

In pleading an official document or official act, it suffices to allege that the document was legally issued or the act legally done.

(e) Judgment.

In pleading a judgment or decision of a domestic or foreign court, a judicial or quasi-judicial tribunal, or a board or officer, it suffices to plead the judgment or decision without showing jurisdiction to render it.

(f) Time and Place.

An allegation of time or place is material when testing the sufficiency of a pleading.

(g) Special Damages.

If an item of special damage is claimed, it must be specifically stated.

(h) Admiralty or Maritime Claim.

(1) How Designated.

If a claim for relief is within the admiralty or maritime jurisdiction and also within the court's subject-matter jurisdiction on some other ground, the pleading may designate the claim as an admiralty or maritime claim for purposes of Rules 14(c), 38(e), and 82 and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. A claim cognizable only in the admiralty or maritime jurisdiction is an admiralty or maritime claim for those purposes, whether or not so designated.

(2) Designation for Appeal.

A case that includes an admiralty or maritime claim within this subdivision (h) is an admiralty case within 28 U.S.C. § 1292(a)(3).

Prayer for Relief.

WHEREFORE Plaintiffs requests:  Judgment in the amount of $2,523,750.00 still due and owing from Defendants to Plaintiffs that Defendant's above-described collateral and the real property to be sold and the proceeds to be applied to plaintiff's lien.

(b)  That Plaintiff be awarded costs of suit and;

That the court grant Plaintiff such other and further relief as it deems just by the nature of this cause may require.

6

(c)  Orders on condition of judgment the court orders Jeffrey Miller  and Patricia Miller to disclose all

real  and personal property, tangible or intangible, hidden and public accounts which  Jeffrey Miller

and Patricia  Miller has under his/her control.

2.Plaintiffs is an adult resident/citizen of (Bensalem township, Pennsylvania)

3. Defendants; The Law Office of <u>Jeffrey a Miller and co-defendant Patricia Miller are Married Couple</u> and

are adults and residents/citizens of (Los Angeles County, Covina, California).  Under California Law,

California Code ; FAM 2851: married couple is  the purpose of division of property on dissolution of

marriage or legal separation of the parties, property acquired by the parties during marriage in

joint form, including property held in tenancy in common, joint tenancy, or tenancy by the

entirety, or as community property, is presumed to be <u>community property</u>. Ahmed Raed is the CEO

of RADRELAX LLC,  a branch of RADRELAX LLC incorporated in Wyoming , Jeffrey Miller is the Owner.

4. <u>The First Cause of Action:</u> is Breach of Contract (see EXHIBIT A, written contract copy of payment via 3

checks total amount of $32,025.00 and wire transfers of $25,000.00 ): On or about 15th of April, 2019

Plaintiffs and Defendants entered into a contract under the terms and provisions of which Plaintiffs

furnished to Defendants funds to invest in the amount of $57,125.00 and the weekly proceeds from April

15th through May 29th, 2019, in the total amount of $120,000.00.  Jeffrey Miller paid Plaintiffs in the amount

of $30,000.00 on May 31, 2019, then over the course of the following two (2) years, paid the amount of

$13,650.00 from February 2020 to May 3, 2021 (see EXHIBIT B, spreadsheet showing Distribution of ROI)

totaling $43,650.00.  Contractually, Mr. Miller promised to pay $1,523,750.00 Return on Investment (ROI),

with payments between $90,000.00 and $120,000.00 monthly for a period of 13 months totaling

$1,523,750.00.  Mr. Miller failing to meet contractual agreement and obligation paid Plaintiffs only

$43,650.00 within the 13 month time-period, falling short of said agreement/obligation by $1, 480,100.00

(see EXHIBIT C —The amount of the lien is $1,523,750.00 plus 9% percent interest in lawful money, plus

itemized interest totaling $2,523,750.00. Section 5001 of New York's Civil Practice Law and Rules

provides that a plaintiff can recover pre-judgment interest at 9%.

The Second Cause of Action:  Plaintiff's Ilia Kornea and Octavian Kecenovici made weekly presentments to Defendants Jeffrey and Patricia Miller, residing in California, as a married couple by way of dishonored text messages and emails, and Plaintiffs resided in Pennsylvania,  from the date of June 9th of 2019 through December 7th, 2021 and a PROPER NOTICE  for Payment (EXHIBIT C),  on  December 7, 2021, to which Mr. Miller never responded and thereby dishonored under New York  UCC 3-501  and  California Commercial Code §3501 (1)(2)(3)(4)  to charge the defendants Jeffrey Miller and Patricia Miller  and make them liable for dishonor and bad faith the amount of  $2,523,750.00.

The Third Cause of Action:  are Unethical Business Practices, under the California and New York BUSINESS AND PROFESSIONS CODE – BPC DIVISION 7. GENERAL BUSINESS REGULATIONS [§§16000 - 18001]

        ( Division 7 added by Stats. 1941, Ch. 61. ) and under and New York Law General Business Law Chapter 20  Article 22A  §  349.  being in dishonor, breach of contract.  Unethical Business Practices a.k.a., Unfair Competition is essentially a deceptive or wrongful business practice that economically harms Plaintiffs, consumers or business entities....

Federal and state laws are designed to protect the economic, intellectual, and creative investments made by businesses in distinguishing themselves and their products.

4.  Attached as an exhibit is the Agricultural Lien [recorded as  Exhibit B, attached] of materials and labor furnished as farm property by Plaintiffs to Defendants and is attached and made a part of this Complaint. All of the materials and labor described in EXHIBIT A were used by Defendants in the construction and expense of farm property.

        Plaintiffs have complied with all provisions of law relating to the filing and perfecting of an Agricultural lien under Article 9 Sections 9601 et seq. of the California commercial code for Enforceability and may (1) Reduce a claim to judgment, foreclose, or otherwise enforce the claim, security interest, or agricultural lien by any available judicial procedure[see EXHBIT B].

    Plaintiffs supplementary Rule C, claim which is a lien in rem on Defendant's real property; AIN:8403-02-17 [located at 1304 EAST DEXTER STREET, COVINA, CALIFORNIA, LOS ANGELES COUNTY] and Vehicles Owned or Driven:  Pontiac G5, Vehicle (VIN); 1G2AN15BX77252124; Dodge Caliber (VIN) 1B3HB48BX8D673040; Cadillac Cts,  (VIN) 1G6D25ED9B0170058, proceeds from RADRELAX LLC, and FIBERH

LLC, Real property to secure payment of the amount owed $2,523,750.00 still due and owing from

Defendants to Plaintiffs by contractual obligation.   Plaintiff has performed all terms and conditions of the

contract on Plaintiff's part to be performed.


**PRAYER FOR RELIEF;**

WHEREFORE Plaintiffs requests:  Judgment in the amount of $2,523,750.00 still due and owing from

Defendants to Plaintiffs that Defendant's above-described collateral and the real property to be sold and the

proceeds to be applied to plaintiff's lien.

1. That Plaintiff be awarded costs of suit and;

That the court grant Plaintiffs such other and further relief as it deems just by the nature of this cause may
require.

2. Orders on condition of judgment the court orders Jeffrey Miller and Patricia Miller to disclose all real

and personal property, tangible or intangible, hidden and public accounts which Jeffrey Miller, Patricia

Miller, RADRLAX LLC and FIBERH LLC, has under his/her control.

3. Plaintiff's request this honorable court to order Jeffrey Miller and Patricia Miller to execute a Payment

Bond in the full amount owed by defendant(s) Jeffrey Miller and Patricia Miller  to Plaintiffs Illia Kornea and

Octavian Kecenovici.

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. State of Pennsylvania County of _Guilford_ subscribed and sworn to (or affirmed) before me on this _20_ day of _May_, 2022, by _Octavian_ _Kecenovici_, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Signature _____ (Seal)

05/14/2020

SIGNED UNDER PENALTY OF PERJURY

by: _____
Ilia Kornea, Plaintiff

A notary public or other officer completing this certificate verifies only the identity of the individual Who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or Validity of the document. State of Pennsylvania County of Bucks, subscribed and sworn to (or affiirmed) before me on this _20_ day of _5_, 2022, by _ILIA KORNEA_ _____, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Signature _____

by: _____
Octavian Kecenovici, Plaintiff

Commonwealth of Pennsylvania-Notary Seal
ELIZABETH A GLASS, NOTARY PUBLIC
BUCKS COUNTY
MY COMMISSION EXPIRES DECEMBER 7, 2024
COMMISSION NUMBER 1302433

10

# AFFIDAVIT OF NOTARY PRESENTMENT

state of ~~New York~~ Pennsylvania )
                                    ) ss.
county of ~~new york~~ Bucks       )

## CERTIFICATION OF MAILING

On this __20__ d a y of __MAY__ _____, 2022, for the purpose of verification, I, the undersigned Notary Public, being commissioned in the County and State noted above, do certify that Illia: House of Kornea appeared before me with the following documents listed below. I, the undersigned notary, personally verified that these documents were placed in an envelope and sealed by me.  They were sent by United States Post Office Registered Mail receipt mail# 7020 1810 0001 S059 3222

NAME AND ADDRESS OF THE RECEIVER
To: "Clerk of Court
United States District Court
Southern District of New York
500 Pearl St
New York, NY 10007

Contents:
1. Complaint for Agriculture Lien by Judicial Process.  (11 pages)
2. Exhibit A:  Contract                                   (15 pages)
3. Exhibit B:  Agricultural Lien & Collateral            ( 11 pages)
4. Exhibit  C:  Notice to Breach of Contract             ( 4 pages )

(Total 41  pages)

WITNESS my hand and official seal.

_____     5/20 22
NOTARY PUBLIC               DATE

My commission expires: __12/07/2024__, ~~2020~~

```
Commonwealth of Pennsylvania-Notary Seal
ELIZABETH A GLASS, NOTARY PUBLIC
BUCKS COUNTY
MY COMMISSION EXPIRES DECEMBER 7, 2024
COMMISSION NUMBER 1302433
```

11

Exhibit A

JOINT VENTURE AGREEMENT
&
PERSONAL GUARANTEE

This Joint Venture Agreement is by and between:

Ilia Kornea, Octavian Kecenovici and Rachel Gendreau, Individuals, residing in Pennsylvania and Illinois ("IK-OK-RG").

AND:

Jeffrey Miller, an individual residing in California and New York ("JM").

WHEREAS, IK-OK-RG and JM (collectively, the "Parties") desire, for their mutual benefit, to enter into this Joint Venture Agreement ("Agreement"), the purpose of which is to grow their wealth through a risk averse funding program for the purchase and resale of product (the "JV" or the "Venture").

NOW THEREFORE, in consideration of various representations, covenants and undertakings contemplated herein and for good and valuable consideration, the value and adequacy of which is hereby acknowledged and by execution hereof the parties agree as follows:

1. The Parties acknowledge that this Agreement supercedes and replaces in its entirety all prior agreements among the Parties, including the previous agreements that the Parties had in place for smaller amounts of money with regard to the same type of joint venture.

2. The Parties agree that initial funding shall be made by IK-OK-RG in the amount of $75,000.00, comprised of monies already on account and new monies brought in by already on Monday April 8, 2019 in the amount of $32,100.00, which brought the exact total invested to $67,600.00, including all profit earned on already invested money, all original money and the $32,100.00, as of that exact date. To that number, IK-OK-RG added the following profit on $9,500.00 to reach a new total of $77,100.00, **but shall exclude any profits on the $75,000.00 from Monday April 8, 2019 through Friday April 12, 2019.** All money above the $75,000.00 is to be returned to IK as of the execution of this Agreement, which shall be purposely set for Friday, April 12, 2019. That amount is $2,100.00. IK and JM agree to use this money in ONE FLIP from April 15, 2019 through April 22, 2019 and then pull it and the profit for it from the equation and it will be returned to IK.

3. It is understood that the $75,000.00 was used in the joint venture from Monday April 8 through Friday April 12, 2019 but agree that the profits from that period are not accrued until April 15, 2019 and therefore will be treated as profits AFTER execution of this Agreement.

4. JM shall use the money described above, ALONG WITH HIS OWN MONEY, described below, to fund the bulk purchase of marijuana (the "product") from licensed bulk wholesalers, on behalf of licensed distributors of the product for resale to end user retailers

# JOINT VENTURE AGREEMENT

## &

## PERSONAL GUARANTEE

for profit. This process takes approximately eight (8) CALENDAR days to complete, to accommodate the several bank transfers that need to occur to complete the process. By way of specific example, the $75,000.00 was considered "deposited" on Monday April 8, 2019. Therefore, the profits accrue on April 15, 2019. And the next effective date of use is the day after. Therefore, in the example at hand, the next "flip" is scheduled for April 16, 2019. All cycles shall terminate on the 8th calendar day.

5. The Parties agree that IK-OK-RG shall each be entitled to the return of and control of $25,000.00 of the Investment, separate from any control by the other two over said $25,000.00 for each. Further, the Parties agree that RG shall be obligated to pay IK, the amounts of $10,000.00 and $15,000.00 at the conclusions of the months of April and May 2019, in return for IK putting up the money for her $25,000.00 share. The Parties understand that they have agreed to roll the entirety of their profits into each cycle, until the total amount for each cycle is $40,000.00 each or $120,000.00 total. At that point, all three of IK-OK-RG MUST TAKE distribution of their profits each cycle from JM.

6. At the completion of each sale from the distributor to the end user retailer, with completion being defined as posting of the wire into JM's account at Bank of America (see above), for the proceeds of the sale being sent to the Seller and the portion due to JM and IK-OK-RG for JM's efforts, JM will, depending on whether they have reached the maximum of $40,000.00 each, roll or forward to IK-OK-RG, $6,250.00 EACH of the profit, derived from IK-OK-RG's money, with JM keeping the remaining $1,825.00 of the profit (as each $25,000.00 generates a TOTAL of $8,125.00 in profit every "flip"). The $25,000.00 invested by each shall always be the property of each of IK-OK-RG and shall be returned upon the expiration of the JV or the request of IK-OK-RG, as indicated below. Likewise, JM's money, described below shall remain his sole and separate property, as will any profits derived from the use of JM's money. It is agreed and understood that IK-OK-RG, is not to profit from the use of JM's money. Further, it is agreed and understood that JM is making the same percentage of profit on JM's money as IK-OK-RG is making on IK-OK-RG's money. Finally, it is understood that JM has earned the Seven Hundred and Fifty Dollars ($1,825.00) of the profits derived from each of IK-OK-RG's money, in return for his efforts in the JV.

7. IK-OK-RG acknowledges the following: a) all relationships with Distributors and Wholesalers are confidential and remain the property of JM; and b) **JM has invested $7,500.00 of his own money into the same process, for which IK-OK-RG does not reap any return.**

8. JM hereby provides a payment guarantee to IK-OK-RG and promises and agrees to repay IK-OK-RG the invested sum of $25,000.00 each, should any of the transactions using IK-OK-RG's money lose the invested amount. JM's guarantee is for the principal only and not the profits made on each transaction. JM's guarantee is considered null and void, once IK-OK-RG has received profits that exceed the invested amount of $25,000.00 each. In addition, JM expressly agrees to pay IK-OK-RG's attorney's fees (including attorney's fees for representation of IK-OK-RG in proceedings pursuant to the Bankruptcy Code),

# JOINT VENTURE AGREEMENT

&

# PERSONAL GUARANTEE

and all other costs and expenses which may be incurred by IK-OK-RG in enforcing payment of the $25,000.00 each guaranteed hereunder.

6. The original amount of $25,000.00 each that IK-OK-RG used to fund this Venture shall revert to IK-OK-RG at the conclusion of this Venture. It is understood that the frequency of transactions is expected to be at least two (2) per month. It is further udnerstood that each transaction is separate from any before it and each after it. And, that there is NO OBLIGATION FOR IK-OK-RG OR JM to continue the JV, after the first transaction unless both desire to so do. Should either elect NOT TO PROCEED, each shall give the other a dated email to that effect. Finally, each of the parties shall have the right to INCREASE OR DECREASE the amount of THEIR PRINCIPAL INVESTMENT as each sees fit. I.e., there is no obligation to continue and there is no obligation to keep the amount at $25,000.00 each for IK-OK-RG or $7,500.00 for JM.

7. Provided that JM has the ability to continue the Venture and that the marketplace supports the purpose of the Venture, then the Venture shall be for a period of one (1) year and may be renewed by the written consent of both parties except that both parties are bound by the non-disclosure and non-circumvention clauses contained herein, IK-OK-RG or JM may terminate this at any time with an email as indicated above, **which shall count as written notice, provided the receiving party acknowledges it and responds to it**.

8. Neither of the parties shall make any representations or warranties to the other party regarding the tax consequences, if any, arising as a result of this collaboration. All parties accept full responsibility for any taxes, levies, duties or other chalK-OK-RGes, both now and in the future that may be due as a result or as a consequence of entering into this joint venture. JM shall issue 1099s to IK-OK-RG for the amount of profits distributed to IK-OK-RG, unless IK-OK-RG is a corporation.

9. No assignment of this agreement or any benefit or obligation derived there from shall be permitted except by mutual written consent.

10. Should either of IK-OK-RG pass away, then their share shall be provided to the surviving member. Should both IK-OK-RG and/or JM pass away, this Agreement is to be terminated and the principal paid to IK-OK-RG within two (2) weeks.

11. This joint venture agreement is based on the following clause for its legal basis and includes, but is not limited to, the special provisions, terms and conditions following therefrom. The parties agree and guarantee not to circumvent, or attempt to circumvent any of the parties in respect of any of the contacts each discloses as a result of this collaboration and to abide by the usual non-circumvention, non-disclosure and force majeure dispositions inherent in this type of agreement for a period of one (1) year from the execution of this agreement, or as long as the transaction continues (whichever is longer). This policy binds all the parties and their respective associates.

# JOINT VENTURE AGREEMENT
## &
## PERSONAL GUARANTEE

12.  If any part of this agreement is in conflict with any rule of the law or statutory provisions, or otherwise is unenforceable under the laws or regulations of any government or sub-division having jurisdiction therefore, that part shall deemed void. However, such invalidity or enforceability shall not invalidate any of the other parts of this collaboration, which shall continue in force.

13.  This agreement shall be governed by and construed in accordance with the laws of New York and all disputes heard in New York City, New York.

14.  This agreement may be executed simultaneously in two or more counterparts, each of which will be deemed to be an original copy of this agreement and all of which, when taken together, will be deemed to constitute one and the same agreement. It is further understood that fax or email copies as well as internet signatures of this agreement shall be declared and considered to be as valid as their original and fully legal, binding and enforceable in any court.

15.  No provision of this agreement may be amended, altered or modified unless it is done so in writing and such amendment, alteration or modification has then been acknowledged and signed by all parties to this agreement.

16.  This agreement executed by and between the parties constitutes the entire understanding of the parties and supersedes any and all prior agreements and negotiations whether written or oral. The parties have made no agreement, representations or warranties, except as set forth herein.  This agreement contains the entire agreement between the parties.  Any amendments hereto, shall be made in writing.

Now therefore the parties agree to set thier hand and seal this 12th day of March, 2019.

For and on behalf of Illian Kornea and Octavian Kecenovici

Signatory: _____
Name:          Illian Kornea/Octavian Kecenovici

For and on behalf of Rachel Gendreau

Signatory: _____
Name:          Rachel Gendreau

For and on behalf of Jeffrey Miller

Signatory: _____
Name:          Jeffrey Miller

# JOINT VENTURE AGREEMENT
# &
# PERSONAL GUARANTEE

This Joint Venture Agreement is by and between:

**Illia Kornea, Octavian Kecenovici and Rachel Gendreau**, Individuals, residing in Pennsylvania and Illinois ("IK-OK-RG").

AND:

**Jeffrey Miller**, an individual residing in California and New York ("JM").

WHEREAS, IK-OK-RG and JM (collectively, the "Parties") desire, for their mutual benefit, to enter into this Joint Venture Agreement ("Agreement"), the purpose of which is to grow their wealth through a risk averse funding program for the purchase and resale of product (the "JV" or the "Venture").

NOW THEREFORE, in consideration of various representations, covenants and undertakings contemplated herein and for good and valuable consideration, the value and adequacy of which is hereby acknowledged and by execution hereof the parties agree as follows:

1. The Parties acknowledge that this Agreement supercedes and replaces in its entirety all prior agreements among the Parties, including the previous agreements that the Parties had in place for smaller amounts of money with regard to the same type of joint ventures.

2. The Parties agree that initial funding shall be made by IK-OK-RG in the amount of $75,000.00, comprised of monies already on account and new monies brought in by check on Monday April 8, 2019 in the amount of $32,100.00, which brought the exact total invested to $67,600.00, including all profit earned on already invested money, all original money and the $32,100.00, as of that exact date. To that number, IK-OK-RG added the following profit of $9,500.00 to reach a new total of $77,100.00, **but shall exclude any profits on the $75,000.00 from Monday April 8, 2019 through Friday April 12, 2019.** All money above the $75,000.00 is to be returned to IK, as of the execution of this Agreement, which shall be purposely set for Friday, April 12, 2019. That amount is $2,100.00. IK and JM agree to use this money in ONE FLIP from April 15, 2019 through April 22, 2019 and then pull it and the profit for it from the equation and it will be returned to IK.

3. It is understood that the $75,000.00 was used in the joint venture from Monday April 8 through Friday April 12, 2019 but agree that the profits from that period are not accrued until April 15, 2019 and therefore will be treated as profits AFTER execution of this Agreement.

4. JM shall use the money described above, ALONG WITH HIS OWN MONEY, described below, to fund the bulk purchase of marijuana (the "product") from licensed bulk wholesalers, on behalf of licensed distributors of the product for resale to end user retailers

# JOINT VENTURE AGREEMENT
## &
## PERSONAL GUARANTEE

for profit. This process takes approximately eight (8) CALENDAR days to complete, to accommodate the several bank transfers that need to occur to complete the process. By way of specific example, the $75,000.00 was considered "deposited" on Monday April 8, 2019. Therefore, the profits accrue on April 15, 2019. And the next effective date of use is the day after. Therefore, in the example at hand, the next "flip" is scheduled for April 16, 2019. All cycles shall terminate on the 8th calendar day.

5. The Parties agree that IK-OK-RG shall each be entitled to the return of and control of $25,000.00 of the Investment, separate from any control by the other two over said $25,000.00 for each. Further, the Parties agree that RG shall be obligated to pay IK, the amounts of $10,000.00 and $15,000.00 at the conclusions of the months of April and May 2019, in return for IK putting up the money for her $25,000.00 share. The Parties understand that they have agreed to roll the entirety of their profits into each cycle, until the total amount for each cycle is $40,000.00 each or $120,000.00 total. At that point, all three of IK-OK-RG MUST TAKE distribution of their profits each cycle from JM.

6. At the completion of each sale from the distributor to the end user retailer, with completion being defined as posting of the wire into JM's account at Bank of America (see above), for the proceeds of the sale being sent to the Seller and the portion due to JM and IK-OK-RG for JM's efforts, JM will, depending on whether they have reached the maximum of $40,000.00 each, roll or forward to IK-OK-RG, $6,250.00 EACH of the profit, derived from IK-OK-RG's money, with JM keeping the remaining $1,825.00 of the profit (as each $25,000.00 generates a TOTAL of $8,125.00 in profit every "flip"). The $25,000.00 invested by each shall always be the property of each of IK-OK-RG and shall be returned upon the expiration of the JV or the request of IK-OK-RG, as indicated below. Likewise, JM's money, described below shall remain his sole and separate property, as will any profits derived from the use of JM's money. It is agreed and understood that IK-OK-RG, is not to profit from the use of JM's money. Further, it is agreed and understood that JM is making the same percentage of profit on JM's money as IK-OK-RG is making on IK-OK-RG's money. Finally, it is understood that JM has earned the Seven Hundred and Fifty Dollars ($1,825.00) of the profits derived from each of IK-OK-RG's money, in return for his efforts in the JV.

4. IK-OK-RG acknowledges the following:  a) all relationships with Distributors and Wholesalers are confidential and remain the property of JM; and b) **JM has invested $7,500.00 of his own money into the same process, for which IK-OK-RG does not reap any return.**

5. JM hereby provides a payment guarantee to IK-OK-RG and promises and agrees to repay IK-OK-RG the invested sum of $25,000.00 each, should any of the transactions using IK-OK-RG's money lose the invested amount. JM's guarantee is for the principal only and not the profits made on each transaction. JM's guarantee is considered null and void, once IK-OK-RG has received profits that exceed the invested amount of $25,000.00 each. In addition, JM expressly agrees to pay IK-OK-RG's attorney's fees (including attorney's fees for representation of IK-OK-RG in proceedings pursuant to the Bankruptcy Code),

# JOINT VENTURE AGREEMENT

# &

# PERSONAL GUARANTEE

and all other costs and expenses which may be incurred by IK-OK-RG in enforcing payment of the $25,000.00 each guaranteed hereunder.

6. The original amount of $25,000.00 each that IK-OK-RG used to fund this Venture shall revert to IK-OK-RG at the conclusion of this Venture. It is understood that the frequency of transactions is expected to be at least two (2) per month. It is further understood that each transaction is separate from any before it and each after it. And, that there is NO OBLIGATION FOR IK-OK-RG OR JM to continue the JV, after the first transaction, unless both desire to so do. Should either elect NOT TO PROCEED, each shall give the other a dated email to that effect. Finally, each of the parties shall have the right to INCREASE OR DECREASE the amount of THEIR PRINCIPAL INVESTMENT as each sees fit, i.e., there is no obligation to continue and there is no obligation to keep the amount at $25,000.00 each for IK-OK-RG or $7,500.00 for JM.

7. Provided that JM has the ability to continue the Venture and that the marketplace supports the purpose of the Venture, then the Venture shall be for a period of one (1) year and may be renewed by the written consent of both parties except that both parties are bound by the non-disclosure and non-circumvention clauses contained herein. IK-OK-RG or JM may terminate this at any time with an email as indicated above, **which shall count as written notice, provided the receiving party acknowledges it and responds to it**.

8. Neither of the parties shall make any representations or warranties to the other party regarding the tax consequences, if any, arising as a result of this collaboration. All parties accept full responsibility for any taxes, levies, duties or other chaIK-OK-RGes, both now and in the future that may be due as a result or as a consequence of entering into this joint venture. JM shall issue 1099s to IK-OK-RG for the amount of profits distributed to IK-OK-RG, unless IK-OK-RG is a corporation.

9. No assignment of this agreement or any benefit or obligation derived there from shall be permitted except by mutual written consent.

10. Should either of IK-OK-RG pass away, then their share shall be provided to the surviiving member. Should both IK-OK-RG and/or JM pass away, this Agreement is to be terminated and the principal paid to IK-OK-RG within two (2) weeks.

11. This joint venture agreement is based on the following clause for its legal basis and includes, but is not limited to, the special provisions, terms and conditions following therefrom. The parties agree and guarantee not to circumvent, or attempt to circumvent, any of the parties in respect of any of the contacts each discloses as a result of this collaboration and to abide by the usual non-circumvention, non-disclosure and force majeure dispositions inherent in this type of agreement for a period of one (1) year from the execution of this agreement, or as long as the transaction continues (whichever is longer). This policy binds all the parties and their respective associates.

# JOINT VENTURE AGREEMENT
## &
## PERSONAL GUARANTEE

12.  If any part of this agreement is in conflict with any rule of the law or statutory provisions, or otherwise is unenforceable under the laws   or   regulations   of   any government or sub-division having jurisdiction therefore, that part shall deemed void. However, such invalidity or enforceability shall not invalidate any of the other parts of this collaboration, which shall continue in force.

13.  This agreement shall be governed by and construed in accordance with the laws of New York and all disputes heard in New York City, New York.

14.  This agreement may be executed simultaneously in two or more counterparts, each of which will be deemed to be an original copy of this agreement and all of which, when taken together, will be deemed to constitute one and the same agreement.  It is further understood that fax or email copies as well as internet signatures of this agreement shall be declared and considered to be as valid as their original and fully legal, binding and enforceable in any court.

15.  No provision of this agreement may be amended, altered or modified unless it is done so in writing and such amendment, alteration or modification has then been acknowledged and signed by all parties to this agreement.

16.   This agreement executed by and between the parties constitutes the entire understanding of the parties and supersedes any and all prior agreements and negotiations whether written or oral. The parties have made no agreement, representations or warranties, except as set forth herein.  This agreement contains the entire agreement between the parties.  Any amendments hereto, shall be made in writing.

Now therefore the parties agree to set thier hand and seal this 12th day of March, 2019.

For and on behalf of Illian Kornea and Octavian Kecenovici

Signatory:_____ _____
Name:        Illian Kornea/Octavian Kecenovici

For and on behalf of Rachel Gendreau

Signatory:_____
Name:        Rachel Gendreau

For and on behalf of Jeffrey Miller

Signatory: _____
Name:            Jeffrey Miller

# JOINT VENTURE AGREEMENT
# &
# PERSONAL GUARANTEE

This Joint Venture Agreement is by and between:

**Illia Kornea, Octavian Kecenovici and Rachel Gendreau**, Individuals, residing in Pennsylvania and Illinois ("IK-OK-RG").

AND:

**Jeffrey Miller,** an individual residing in California and New York ("JM").

WHEREAS, IK-OK-RG and JM (collectively, the "Parties") desire, for their mutual benefit, to enter into this Joint Venture Agreement ("Agreement"), the purpose of which is to grow their wealth through a risk averse funding program for the purchase and resale of product (the "JV" or the "Venture").

NOW THEREFORE, in consideration of various representations, covenants and undertakings contemplated herein and for good and valuable consideration, the value and adequacy of which is hereby acknowledged and by execution hereof the parties agree as follows:

1. The Parties acknowledge that this Agreement supercedes and replaces in its entirety all prior agreements among the Parties, including the previous agreements that the Parties had in place for smaller amounts of money with regard to the same type of joint ventures.

2. The Parties agree that initial funding shall be made by IK-OK-RG in the amount of $75,000.00, comprised of monies already on account and new monies brought in by check on Monday April 8, 2019 in the amount of $32,100.00, which brought the exact total invested to $67,600.00, including all profit earned on already invested money, all original money and the $32,100.00, as of that exact date. To that number, IK-OK-RG added the following profit of $9,500.00 to reach a new total of $77,100.00, **but shall exclude any profits on the $75,000.00 from Monday April 8, 2019 through Friday April 12, 2019.** All money above the $75,000.00 is to be returned to IK, as of the execution of this Agreement, which shall be purposely set for Friday, April 12, 2019. That amount is $2,100.00. IK and JM agree to use this money in ONE FLIP from April 15, 2019 through April 22, 2019 and then pull it and the profit for it from the equation and it will be returned to IK.

3. It is understood that the $75,000.00 was used in the joint venture from Monday April 8 through Friday April 12, 2019 but agree that the profits from that period are not accrued until April 15, 2019 and therefore will be treated as profits AFTER execution of this Agreement.

4. JM shall use the money described above, ALONG WITH HIS OWN MONEY, described below, to fund the bulk purchase of marijuana (the "product") from licensed bulk wholesalers, on behalf of licensed distributors of the product for resale to end user retailers

# JOINT VENTURE AGREEMENT
## &
## PERSONAL GUARANTEE

and all other costs and expenses which may be incurred by IK-OK-RG in enforcing payment of the $25,000.00 each guaranteed hereunder.

6. The original amount of $25,000.00 each that IK-OK-RG used to fund this Venture shall revert to IK-OK-RG at the conclusion of this Venture. It is understood that the frequency of transactions is expected to be at least two (2) per month. It is further understood that each transaction is separate from any before it and each after it. And, that there is NO OBLIGATION FOR IK-OK-RG OR JM to continue the JV, after the first transaction, unless both desire to so do. Should either elect NOT TO PROCEED, each shall give the other a dated email to that effect. Finally, each of the parties shall have the right to INCREASE OR DECREASE the amount of THEIR PRINCIPAL INVESTMENT as each sees fit, i.e., there is no obligation to continue and there is no obligation to keep the amount at $25,000.00 each for IK-OK-RG or $7,500.00 for JM.

7. Provided that JM has the ability to continue the Venture and that the marketplace supports the purpose of the Venture, then the Venture shall be for a period of one (1) year and may be renewed by the written consent of both parties except that both parties are bound by the non-disclosure and non-circumvention clauses contained herein. IK-OK-RG or JM may terminate this at any time with an email as indicated above, **which shall count as written notice, provided the receiving party acknowledges it and responds to it**.

8. Neither of the parties shall make any representations or warranties to the other party regarding the tax consequences, if any, arising as a result of this collaboration. All parties accept full responsibility for any taxes, levies, duties or other chaIK-OK-RGes, both now and in the future that may be due as a result or as a consequence of entering into this joint venture. JM shall issue 1099s to IK-OK-RG for the amount of profits distributed to IK-OK-RG, unless IK-OK-RG is a corporation.

9. No assignment of this agreement or any benefit or obligation derived there from shall be permitted except by mutual written consent.

10. Should either of IK-OK-RG pass away, then their share shall be provided to the surviiving member. Should both IK-OK-RG and/or JM pass away, this Agreement is to be terminated and the principal paid to IK-OK-RG within two (2) weeks.

11. This joint venture agreement is based on the following clause for its legal basis and includes, but is not limited to, the special provisions, terms and conditions following therefrom. The parties agree and guarantee not to circumvent, or attempt to circumvent, any of the parties in respect of any of the contacts each discloses as a result of this collaboration and to abide by the usual non-circumvention, non-disclosure and force majeure dispositions inherent in this type of agreement for a period of one (1) year from the execution of this agreement, or as long as the transaction continues (whichever is longer). This policy binds all the parties and their respective associates.

# JOINT VENTURE AGREEMENT
## &
## PERSONAL GUARANTEE

However, such invalidity or enforceability shall not invalidate any of the other parts of this collaboration, which shall continue in force.

13. This agreement shall be governed by and construed in accordance with the laws of New York and all disputes heard in New York City, New York.

~. This agreement may be executed simultaneously in two or more counterparts, each of which will be deemed to be an original copy of this agreement and all of which, when taken together, will be deemed to constitute one and the same agreement. It is further understood that fax or email copies as well as internet signatures of this agreement shall be declared and considered to be as valid as their original and fully legal, binding and enforceable in any court.

15. No provision of this agreement may be amended, altered or modified unless it is done so in writing and such amendment, alteration or modification has then been acknowledged and signed by all parties to this agreement.

6. This agreement executed by and between the parties constitutes the entire understanding of the parties and supersedes any and all prior agreements and negotiations whether written or oral. The parties have made no agreement, representations or warranties, except as set forth herein. This agreement contains the entire agreement between the parties. Any amendments hereto, shall be made in writing.

Now therefore the parties agree to set thier hand and seal this 12th day of March, 2019.

For and on behalf of Illian Kornea and Octavian Kecenovici

Signatory:
Name:         Illian Kornea/Octavian Kecenovici

For and on behalf of Rachel Gendreau

Signatory:
Name:         Rachel Gendreau

For and on behalf of Jeffrey Miller

Signatory:
Name:         Jeffrey Miller

**OFFICIAL CHECK**

515245668-6

HOLD DOCUMENT UP TO THE LIGHT TO VIEW TRUE WATERMARK

**Citizens Bank**

057-0012
0115

April 05 2019

PAY ____ ⁂⁂⁂ $13,750.00 ⁂⁂⁂ DOLLARS

TO THE
ORDER OF ____ ⁂ THE LAW OFFICE OF JEFFREY MILLER ⁂

Drawer: Citizens Bank, N.A.

MEMO:

AUTHORIZED SIGNATURE

20752164

⑈515245668⑈ ⑆011500120⑈

---

**OFFICIAL CHECK**

HOLD DOCUMENT UP TO THE LIGHT TO VIEW TRUE WATERMARK

515245666-0

**Citizens Bank**

057-0012
0115

April 05 2019

PAY ____ ⁂⁂⁂ $4,000.00 ⁂⁂⁂ DOLLARS

TO THE
ORDER OF ____ ⁂ THE LAW OFFICE OF JEFFREY MILLER ⁂

Drawer: Citizens Bank, N.A.

MEMO:

AUTHORIZED SIGNATURE

20752164

⑈515245666⑈ ⑆011500120⑈

---

**OFFICIAL CHECK**

HOLD DOCUMENT UP TO THE LIGHT TO VIEW TRUE WATERMARK

515245667-8

**Citizens Bank**

057-0012
0115

April 05 2019

PAY ____ ⁂⁂⁂ $9,375.00 ⁂⁂⁂ DOLLARS

TO THE
ORDER OF ____ ⁂ THE LAW OFFICE OF JEFFREY MILLER ⁂

Drawer: Citizens Bank, N.A.

MEMO:

AUTHORIZED SIGNATURE

20752164

⑈515245667⑈ ⑆011500120⑈

Outgoing Wire Transfer



**R.I.A.**
**CREDIT UNION**

**Deadline: 3:00 pm CST.** Any requests received after the deadline will not be processed until the next business day. R.I.A. Federal Credit Union cannot control the delivery date of the receiving financial institution.

Telephone: (563) 355-3800 or (800) 742-2848
Fax: (563) 355-9680
R.I.A. Federal Credit Union
PO Box 4750
Moline, Rock Island, IL 61204-4750

Wire Fees: Please refer to our Fee Schedule

563-355-3800 • 800-742-2848

CTR

MH 436493

## Section 1: Sender Information

| | | | |
|---|---|---|---|
| Member's Name (Last, First) GENDREAU, VICKY (10113936642) | RIAFCU Account Number for funds 3978029 | Apt # | Account number for fee 3978029 | Wire Amount $ 10,000.00 |

Street Address
330 MAIN ST

Home/Work Phone (815) 297-2603

| City SAVANNA | State IL | Zip | Cell Phone (815) 297-2603 |

## Section 2: Receiver's Bank Information

Receiver's Bank Name

Receiver's Bank Street Address

| City | State | Zip |

Domestic Wire: Bank's ABA/Routing # (9-digits)
026009593

## Section 3: Correspondent Bank Information  (Further Credit To)

| Correspondent Bank Name BANK OF AMERICA (10113936645) | | Correspondent Bank Account Number |

Correspondent Bank Street Address
2180 HUNTINGTN DR

| City SAN MARINO | State CA | Zip 91108 | Country |

## Section 4: Beneficiary's Information

Beneficiary's Name (Last, First)
LAW OFFICE OF JEFFREY MILLER (10113936650)

Beneficiary's Bank Account Number
32-51010-61953

Beneficiary's Street Address
1304 E DEXTER STREET

| City COVINA | State CA | Zip 91724 | Country USA |

Optional Memo (Example: Invoice number, tuition payment, escrow number, etc)
PH #213-926-5885

## Section 5: Authorizing Signature

If you send or receive a wire transfer, FedWire may be used. Regulation J is the law covering all FedWire transactions. This means that your rights and liabilities in a wire transfer involving FedWire will be governed by Regulation J.

If you give RIA Federal Credit Union a payment order which identifies the beneficiary (recipient of the funds) by both name and identifying or account number, payment may be made by the beneficiary's bank on the basis of the identifying or bank account number, even if the number identifies a person different than the named beneficiary. This means that you will be responsible to the credit union if the funds transfer is completed on the basis of the identification number you provided the credit union

If you give RIA Federal Credit Union a payment order which identifies an intermediary or beneficiary's bank by both name and an identifying number, a receiving bank may rely on the number as the proper identification even if it identified a different person than the named bank. This means that you will be responsible for any loss or expenses incurred by a receiving bank which executes or attempts to execute the payment order in reliance on the identifying number you provided.

RIA Federal Credit Union may contact you to confirm transfer requests.

Member's Signature
IL DL

Today's Date 3-26-19

Identification Document Type (State ID/Driver License, or Passport)

Identification Document Number G536-8775-3868

Employee's Initials VLM

| For RIAFCU Office Use Only – OFAC Check | | Sender Info | ☑ Match | ☐ No Match |
|---|---|---|---|---|
| Received By: (Name/Teller #, Branch/Operations Support) | | Receiver Info | ☐ Match | ☐ No Match | |
| Verified By: (Name/Teller #, EFT) Isaiah S 12057 | | Receiver Info | ☑ Match | ☐ No Match | |
| Debited By: (Name/Teller #, EFT) | 75 Years Of Service To Our Members | Correspondent | ☑ Match | ☐ No Match | ☐ N/A |
| Sent By: (Name/Teller #, Branch/EFT) Sarah S 12057 | | Beneficiary | ☑ Match | ☐ No Match | |

# Outgoing Wire Transfer Authorization Form



**R.I.A.**
**CREDIT UNION**

CTR

**Deadline: 3:00 pm CST.** Any requests received after the deadline will not be processed until the next business day. R.I.A. Federal Credit Union cannot control the delivery date of the receiving financial institution.

Telephone: (563) 355-3800 or (800) 742-2848
Fax: (563) 355-9680
Mail: R.I.A. Federal Credit Union
PO Box 4750
Rock Island, IL 61204-4750

Wire Fees: Please refer to our Fee Schedule

M# 397802

## Section 1: Sender Information

| Member's Name (Last, First) | RIAFCU Account Number for funds | Account number for fee | Wire Amount |
|---|---|---|---|
| GREAT RIVER ROAD (101139318108) | 3978029 | 3978029 | $ 15,000.00 |
| Street Address | | Apt # | Home/Work Phone |
| 330 MAIN ST | | | (815) 297-2603 |
| City | State | Zip | Cell Phone |
| SAVANNA | IL | 61074 | SAME |

## Section 2: Receiver's Bank Information

Receiver's Bank Name

Receiver's Bank Street Address

| City | State | Zip |
|---|---|---|

Domestic Wire: Bank's ABA/Routing # (9-digits)
026009593

## Section 3: Correspondent Bank Information (Further Credit To)

| Correspondent Bank Name | Correspondent Bank Account Number |
|---|---|
| BANK OF AMERICA | |

Correspondent Bank Street Address
2180 HUNTINGTON DR

| City | State | Zip | Country |
|---|---|---|---|
| SAN MARINO | CA | 91108 | |

## Section 4: Beneficiary's Information

| Beneficiary's Name (Last, First) |
|---|
| LAW OFFICE OF JEFFREY MILLER (10113931808S) |

Beneficiary's Bank Account Number
32-51010-61953

Beneficiary's Street Address
1304 E DEXTER STREET

| City | State | Zip | Country |
|---|---|---|---|
| COVINA | CA | 91724 | USA |

Optional Memo (Example: Invoice number, tuition payment, escrow number, etc)
PHONE #213-926-5885

## Section 5: Authorizing Signature

If you send or receive a transfer, FedWire may be used. Regulation J is the law covering all FedWire transactions. This means that your rights and liabilities in a wire transfer involving FedWire will be governed by Regulation J.

If you give RIA Federal Credit Union a payment order which identifies the beneficiary (recipient of the funds) by both name and identifying or account number, payment may be made by the beneficiary's bank on the basis of the identifying or bank account number, even if the number identifies a person different than the named beneficiary. This means that you will be responsible to the credit union if the funds transfer is completed on the basis of the identification number you provided the credit union

If you give RIA Federal Credit Union a payment order which identifies an intermediary or beneficiary's bank by both name and an identifying number, a receiving bank may rely on the number as the proper identification even if it identified a different person than the named bank. This means that you will be responsible for any loss or expenses incurred by a receiving bank which executes or attempts to execute the payment order in reliance on the identifying number you provided.

RIA Federal Credit Union may contact you to confirm transfer requests.

Member's Signature
(9-536- 8775- 3808
Identification Document Type (State ID/Driver License, or Passport)

Today's Date
3/21/19
IL DL
Identification Document Number

JM 1057/2
Employees Initials

| For RIAFCU Office Use Only - OFAC Check |  |  |  |
|---|---|---|---|
| Received By: (Name/Teller #, Branch/Operations Support) Pamela Phil #120274  1057 12 | Sender Info | ☐ Match | ☒ No Match |
| Verified By: (Name/Teller #, EFT) Sarah Smith #120274 | Receiver Info | ☐ Match | ☒ No Match |
| Debited By: (Name/Teller #, EFT) Pamela 145957 | Respondent Info | ☐ Match | ☒ No Match |
| Sent By: (Name/Teller #, Branch/EFT) Sarah S 120274 | Beneficiary | ☐ Match | ☒ No Match  ☐ N/A  SS |

9/2015

**Exhibit B**

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

Illia Kornea
6314 Fernwood Ave
Bensalem, PA [19020]

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names
1a. ORGANIZATION'S NAME

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| MILLER | JEFFREY | ANTHONY | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1304 EAST DEXTER STREET | COVINA | CA | | US |

1d. TAX ID #: SSN OR EIN | ADD'L INFO RE | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any
ORGANIZATION
DEBTOR
□ NONE

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names
2a. ORGANIZATION'S NAME

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| MILLER | PATRICIA | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1304 EAST DEXTER STREET | COVINA | CA | 91724-3226 | |

2d. TAX ID #: SSN OR EIN | ADD'L INFO RE | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any
ORGANIZATION
DEBTOR
□ NONE

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)
3a. ORGANIZATION'S NAME

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| Kornea | Illia | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 5314 Fernwood Avenue | Bensalem | PA | 19020 | US |

4. This FINANCING STATEMENT covers the following collateral:

ILLIA KORNEA LANDED ESTATE and Real Estate - Any Real Property and Personal Property.

Title 7 U.S. Code § 136(d) - Definitions (d)Animal - The term "animal" means all vertebrate and invertebrate species , including but not limited to man and other mammals, birds, fish, and shellfish.

Description of the land property - get the APN number and place under "fixtures"....Anything that the debtor has in his name we can place a lien on - houses, businesses, look for any vehicles registered in his (Jeffery Miller's) name...motor vehicles, commercial vehicles.

PATRICIA MILLER
1304 E DEXTER ST
COVINA, CA 91724 3226 AIN:8403 002 917

See Attached: Exhibit A

| 5. ALTERNATIVE DESIGNATION [if applicable] | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | ☒ AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [optional] | All Debtors | Debtor 1 | Debtor 2

8. OPTIONAL FILER REFERENCE DATA

FIXTURES -

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

## COLLATERAL: EXHIBIT A

### 202012710401   RAD RELAX LLC selling CBD oil and marijuana products[Administratively Dissolved]

Registration Date:
04/30/2020
Jurisdiction:
WYOMING
Entity Type:
FOREIGN
Status:
ACTIVE
Agent for Service of Process:
<u>AHMED RAED CEO RAD RELAX LLC</u>
9881 6TH ST. 206
LOS ANGELES CA 91730
Entity Address:
9881 6TH ST. 206
RANCHO CUCAMONGA CA 91730
Entity Mailing Address:
9881 6TH ST. 206
RANCHO CUCAMONGA CA 91730

**Rad Relax Administratively Dissolved in the State of Wyoming**

| Rad Relax LLC - 2019-000860023 (LLC) | | nactive - Administratively Dissolved No Agent | |
| --- | --- | --- | --- |
| Good | | Delinquent | 12.12.2019 |

**<u>Patricia and Jeffery Miller classified as farm animals under Title 7 §136(d) Also as Farm Animals, Goods and Movables under CA Uniform Commercial Code § 9102 (44).</u>**  **"The term includes (i)** _____ **, (ii) standing timber that is to be cut and removed under a conveyance or contract for sale."**

**<u>(d)</u>**<u>A</u>NIMAL
The term "animal" means all vertebrate and invertebrate species, including but not limited to man and other mammals, birds, fish, and shellfish.**

**<u>california Commercial Code § 9102 Definitions:</u>**

**(5) "<u>Agricultural lien</u>" means an interest in** _____ **:**

**(A) which secures payment or performance of an obligation for:**

**(i)** _____ **or services furnished in connection with a** _____ **'s** _____ **; or**

1

(ii) rent on real property leased by a          in connection with
its                    ;

(B) which is created by statute in favor of a person that:

(i) in the ordinary course of its business furnished          or
services to a          in connection with a          's
               ; or

(ii) leased real property to a          in connection with the
debtor's                    ; and

(C) whose effectiveness does not depend on the person's
possession of the personal property.


**Public Law 7310 THE AGRICULTURAL ADJUSTMENT ACT of
May 12, 1933;**

**AMOUNT OF LIEN:** $1,523,750.00 plus 10% interest in lawful
money plus itemized interest $2,523,750.00.


california Civil Code section 3289 allows for interest at 10
percent for a breach of contract.


**california Commercial Code § 9102 Definitions:**

(44) "Goods" means all things that are movable when a
security interest attaches. The term includes (i)          , (ii)
standing timber that is to be cut and removed under a
conveyance or contract for sale, (iii) the unborn young of
animals, (iv) crops grown, growing, or to be grown, even if the
crops are produced on trees, vines, or bushes, and
(v)                         . The term also includes a computer
program embedded in goods and any supporting information
provided in connection with a transaction relating to the
program if (i) the program is associated with the goods in such
a manner that it customarily is considered part of the goods,
or (ii) by becoming the owner of the goods, a person acquires
a right to use the program in connection with the goods. The
term does not include a computer program embedded in goods
that consist solely of the medium in which the program is

2

embedded. The term also does not include accounts, chattel paper, commercial tort claims, deposit accounts, documents, general intangibles, instruments, investment property, letter-of-credit rights, letters of credit, money or oil, gas or other minerals before extraction.

(40) "Fixture filing" means the filing of a                      covering            that are or are to become fixtures and satisfying Section            and (b). The term includes the filing of a financing statement covering goods of a         which are or are to become            .

(41) "Fixtures" means goods that have become so related to particular real property that an interest in them arises under real property law.

(10) "<u>Certificate of title</u>" means a certificate of title with respect to which a statute provides for the security interest in question to be indicated on the certificate as a condition or result of the security interest's obtaining priority over the rights of a            with respect to the            . The term includes another record maintained as an alternative to a certificate of title by the governmental unit that issues certificates of title if a statute permits the security interest in question to be indicated on the record as a condition or result of the security interest's obtaining priority over the rights of a lien creditor with respect to the collateral.

# GENERAL RULES OF PRACTICE

## Rule 220.Birth Certificates

The Registrar of Titles is authorized to receive for registration of memorials upon any outstanding certificate of title an official birth certificate pertaining to a registered owner named in said certificate of title showing the date of birth of said registered owner, providing there is attached to said birth certificate an affidavit of an affiant who states that he/she is familiar with the

3

ILLIA KORNEA LANDED ESTATE and Real Estate- Any Real Estate Property and Personal.

Tilte 7 U.S. Code sec. 136(d)-Definition (d) - Animal-The term "animal " means all vertebrate and invertebrate species, including but not limited to man and other mamals, birds, fish and shellfish.

COLLATERAL : Description of the land/property-202012710401    RAD RELAX LLC selling CBD oil and marijuana products[Administratively Dissolved]

Registration Date:04/30/2020 : Jurisdiction: WYOMING Entity Type: FOREIGN Status: ACTIVE:Agent for Service of Process:

AHMED RAED CEO RAD RELAX LLC

9881 6TH ST, 206 LOS ANGELES CA 91730

Entity Address:

9881 6TH ST, 206

RANCHO CUCAMONGA CA 91730

Entity Mailing Address: 9881 6TH ST, 206

RANCHO CUCAMONGA CA 91730

Rad Relax Administratively Dissolved in the State of Wyoming

FiberH LLC

Company Number: 2020-000914525

Status: Active: Incorporation Date: 3 May 2020 (over 1 year ago): Company Type: Limited Liability Company

Jurisdiction: Wyoming (US): Registered Address: 30 N Gould St Ste R

Sheridan, WY 82801 USA United States

Agent Name : Registered Agents Inc

Agent Address

30 N Gould St Ste R Sheridan, WY 82801 USA

Directors / Officers

JEFFREY MILLER, organizer

PATRICIA J MILLER

1304 EAST DEXTER ST

COVINA CA. 91724-3226

FIXTURES;

AIN: 8403-002-017

Vehicles Owned or Driven Pontiac G5, Vehicle Identification Number (VIN)-1G2AN15BX77252124

Dodge Caliber, Vehicle Identification Number (VIN)-1B3HB48BX8D673040

Cadillac Cts-Vehicle Identification Number (VIN)-1G6D25ED9B0170058

Patricia and Jeffery Miller classified as farm animals under Title 7 §136(d) Also as Farm Animals, Goods and Movables under CA Uniform Commercial Code § 9102 (44). "The term includes (i) fixtures, (ii) standing timber that is to be cut and removed under a conveyance or contract for sale."

(d)ANIMAL

The term "animal" means all vertebrate and invertebrate species, including but not limited to man and other mammals, birds, fish, and shellfish.

california Commercial Code § 9102 Definitions:

(5) "Agricultural lien" means an interest in farm products:

(A) which secures payment or performance of an obligation for:

(i) goods or services furnished in connection with a debtor's farming operation; or

(ii) rent on real property leased by a debtor in connection with its farming operation;

(B) which is created by statute in favor of a person that:

(i) in the ordinary course of its business furnished goods or services to a debtor in connection with a debtor's farming operation; or

(ii) leased real property to a debtor in connection with the debtor's farming operation; and

(C) whose effectiveness does not depend on the person's possession of the personal property.

Public Law 7310 THE AGRICULTURAL ADJUSTMENT ACT of May 12, 1933;

AMOUNT OF LIEN: $1,523,750.00 plus 10% interest in lawful money plus itemized interest $2,523,750.00.

california Civil Code section 3289 allows for interest at 10 percent for a breach of contract.

california Commercial Code § 9102 Definitions:

(44) "Goods" means all things that are movable when a security interest attaches. The term includes (i) fixtures, (ii) standing timber that is to be cut and removed under a conveyance or contract for sale, (iii) the unborn young of animals, (iv) crops grown, growing, or to be grown, even if the crops are produced on trees, vines, or bushes, and (v) manufactured homes. The term also includes a computer program embedded in goods and any supporting information provided in connection with a transaction relating to the program if (i) the program is associated with the goods in such a manner that it customarily is considered part of the goods, or (ii) by becoming the owner of the goods, a person acquires a right to use the program in connection with the goods. The term does not include a computer program embedded in goods that consist solely of the medium in which the program is embedded. The term also does not include accounts, chattel paper, commercial tort claims, deposit accounts, documents, general intangibles, instruments, investment property, letter-of-credit rights, letters of credit, money or oil, gas or other minerals before extraction.

(40) "Fixture filing" means the filing of a financing statement covering goods that are or are to become fixtures and satisfying Section 9-502(a) and (b). The term includes the filing of a financing statement covering goods of a transmitting utility which are or are to become fixtures.

(41) "Fixtures" means goods that have become so related to particular real property that an interest in them arises under real property law.

(10) "Certificate of title" means a certificate of title with respect to which a statute provides for the security interest in question to be indicated on the certificate as a condition or result of the security interest's obtaining priority over the rights of a lien creditor with respect to the collateral. The term includes another record maintained as an alternative to a certificate of title by the governmental unit that issues certificates of title if a statute permits the security interest in question to be indicated on the record as a condition or result of the security interest's obtaining priority over the rights of a lien creditor with respect to the collateral.

### GENERAL RULES OF PRACTICE

Rule 220.Birth Certificates

The Registrar of Titles is authorized to receive for registration of memorials upon any outstanding certificate of title an official birth certificate pertaining to a registered owner named in said certificate of title showing the date of birth of said registered owner, providing there is attached to said birth certificate an affidavit of an affiant who states that he/she is familiar with the

facts recited, stating that the party named in said birth certificate is the same party as one of the owners named in said certificate of title; and that thereafter the Registrar of Titles shall treat said registered owner as having attained the age of the majority at a date 18 years after the date of birth shown by said certificate.

### Task Force Comment - 1991 Adoption

*This rule is derived from 4th Dist. R. 11.05.*

Affiant Illia Kornea is the affiant who states that he is familiar with the facts recited, stating that the party named in said birth certificate is the same party as one of the owners named in said certificate of title; and that thereafter the Registrar of Titles shall treat said registered owner as having attained the age of the majority at a date 18 years after the date of birth shown by said certificate.

### Task Force Comment - 1991 Adoption

*This rule is derived from 4th Dist. R. 11.05.*

Commonwealth of pennsylvania )
                         ) SS:
County of  Bucks          )

Sworn to and subscribed before me on the 14th day of January, 20 22, by
Illia Kornea  (name of principal signer).

Commonwealth of Pennsylvania - Notary Seal
ANDREW GRIFFITH, Notary Public
Bucks County
My Commission Expires May 3, 2023
Commission Number 1348998

(Seal)

Illia Kornea  Grantor/Settlor
26 USC 671 - 679

State of Arizona )
                   ) SS:
County of Maricopa     )

Sworn to and subscribed before me on the 13 day of January, 20 22, by
Octavian Kecenovici (name of principal signer).

(Seal)

Octavian Kecenovici Grantor/Settlor

GLORIA GOODROAD
Notary Public - Arizona
Maricopa County
Commission # 553762
My Comm. Expires Oct 25, 2022

4

From April 15 - May 27th NO Disbursements Only After reaching $40K Each, then every 8th Day

7 days Trading,  Disbursements on the 8th day.

| JV Investment/ M | $40K | $40K | $40K | Total ($120K Disbursements  Due |
|---|---|---|---|---|
| disbursements/ 8t Illia | | Octavian | Illia | |
| May  2nd in Trade /Each | | | | |
| May 10th / In Trade /No  Disbursements | | | | |
| May 18th / In Trade / No disbursements | | | | |
| May 28th ( $50,98 $10,980K | | $10,980K | $10,980.00K  $32,942.00 | $2,490.00 |
| May 31/2019 (Payments) | | First Disbursement | | $30,000.00 |

7 Days of Trade/DISBERSUEMENTS on the 8TH DAY starting June 7th 2019 - July 31st 2020

| | | | | |
|---|---|---|---|---|
| June 7th | $10,000.00 | $10,000.00 | $10,000.00 | $30,000.00 |
| June 15th | $10,000 | $10,000.00 | $10,000.00 | $30,000.00 |
| June 24th | $10,000.00 | $10,000.00 | $10,000.00 | $30,000.00 |
| | | | | $90K |
| | | | | |
| July 2nd | $10,000.00 | $10,000.00 | $10,000.00 | |
| July 10th | $10,000.00 | $10,000.00 | $10,000.00 | |
| July 18th | $10,000.00 | $10,000.00 | $10,000.00 | |
| July 26th | $10,000.00 | $10,000.00 | $10,000.00 | |
| | | | | $120K |
| | | | | |
| August 3rd | $10,000.00 | $10,000.00 | $10,000.00 | |
| August 12th | $10,000.00 | $10,000.00 | $10,000.00 | |
| August 20th | $10,000.00 | $10,000.00 | $10,000.00 | |
| August 28th | $10,000.00 | $10,000.00 | $10,000.00 | |
| | | | | $120K |
| | | | | |
| September 5th | $10,000.00 | $10,000.00 | $10,000.00 | |
| September 13th | $10,000.00 | $10,000.00 | $10,000.00 | |
| September 23rd | $10,000.00 | $10,000.00 | $10,000.00 | |
| | | | | $90K |
| | | | | |
| October 1st | $10,000.00 | $10,000.00 | $10,000.00 | |
| October 9th | $10,000.00 | $10,000.00 | $10,000.00 | |
| October 17th | $10,000.00 | $10,000.00 | $10,000.00 | |
| October 25th | $10,000.00 | $10,000.00 | $10,000.00 | |
| | | | | $120K |
| | | | | |
| November 4th | $10,000.00 | $10,000.00 | $10,000.00 | |
| November 12th | $10,000.00 | $10,000.00 | $10,000.00 | |
| November 20th | $10,000.00 | $10,000.00 | $10,000.00 | |
| November 28th | $10,000.00 | $10,000.00 | $10,000.00 | |
| | | | | $120K |

| | | | | |
|---|---|---|---|---|
| December 6th | $10,000.00 | $10,000.00 | $10,000.00 | |
| December 16th | $10,000.00 | $10,000.00 | $10,000.00 | |
| December 24th | $10,000.00 | $10,000.00 | $10,000.00 | |
| | | | | $90K |
| | | | | |
| Year 2020 | | | | |
| January 2nd | $10,000.00 | $10,000.00 | $10,000.00 | |
| January 10th | $10,000.00 | $10,000.00 | $10,000.00 | |
| January 20th | $10,000.00 | $10,000.00 | $10,000.00 | |
| January 28th | $10,000.00 | $10,000.00 | $10,000.00 | |
| | | | | $120K |
| | | | | |
| February 6th | $10,000.00 | $10,000.00 | $10,000.00 | |
| February 14th | $10,000.00 | $10,000.00 | $10,000.00 | |
| February 22nd | $10,000.00 | $10,000.00 | $10,000.00 | |
| | | | | $90K |
| | | | | |
| March 2nd | $10,000.00 | $10,000.00 | $10,000.00 | |
| March 10th | $10,000.00 | $10,000.00 | $10,000.00 | |
| March 18th | $10,000.00 | $10,000.00 | $10,000.00 | |
| March 26th | $10,000.00 | $10,000.00 | $10,000.00 | |
| | | | | $120K |
| | | | | |
| April 3rd | $10,000.00 | $10,000.00 | $10,000.00 | |
| April 11th | $10,000.00 | $10,000.00 | $10,000.00 | |
| April 20th | $10,000.00 | $10,000.00 | $10,000.00 | |
| April 28th | $10,000.00 | $10,000.00 | $10,000.00 | |
| | | | | $120K |
| | | | | |
| May 6th | $10,000.00 | $10,000.00 | $10,000.00 | |
| May 14th | $10,000.00 | $10,000.00 | $10,000.00 | |
| May 22nd | $10,000.00 | $10,000.00 | $10,000.00 | |
| May 30th | $10,000.00 | $10,000.00 | $10,000.00 | |
| | | | | $120K |
| | | | | |
| June 3rd | $10,000.00 | $10,000.00 | $10,000.00 | |
| June 11th | $10,000.00 | $10,000.00 | $10,000.00 | |
| June 19th | $10,000.00 | $10,000.00 | $10,000.00 | |
| June 27th | $10,000.00 | $10,000.00 | $10,000.00 | |
| | | | | $120K |
| | | | | |
| July 8th | $10,000.00 | $10,000.00 | $10,000.00 | |
| July 16th | $10,000.00 | $10,000.00 | $10,000.00 | |
| July 24th | $10,000.00 | $10,000.00 | $10,000.00 | |
| July 31st | $10,000.00 | $10,000.00 | $10,000.00 | |
| | | | | $120K |
| | | | | |
| | $520,000.00 | $520,000.00 | $520,000.00 | $1,560,000.00 |
| | | | Total | $1,560,000.00 |

Exhibit C

From: Illia Kornea and
    Octavian Kecenovici
6314 Fernwood Avenue
Bensalem, Pennsylvania 19020
RE: Notice of Breach of Contract and
2021
    Opportunity to Cure

November 1, 2021,

To: Jeffery Miller
1304 East Dexter Street
Covina, California 91724

This letter constitutes a presentment and demand for payment under the
California Commercial Code §§ 3501 and 3502 in the principle amount of
$2,523,750.00 for breach of contract, extortion, and mail fraud. This letter
constitutes notice and demand for payment in full within 30 days from the receipt
of this letter.

If you refuse to pay the full amount of $2,523,750.00 within 30 days or I will file
suit and foreclose on your house and all of your assets and will file a criminal
complaint with the district attorney's office.

Sincerely,

Illia Kornea

Octavian Kecenovici

1

## AFFIDAVIT OF NOTARY PRESENTMENT
## NOTARY'S CERTIFICATION OF PROTEST & MAILING

On this 1st, day of November, 2021, for the purpose of verification, I, the undersigned Notary Public, being commissioned in State of Pennsylvania and Florida do certify that Illia Kornea and Octavian Kecenovici appeared before me with the following documents listed below.  I, the undersigned notary, personally verified that these documents were placed in a stamped envelope and sealed by me.

From: Illia Kornea and Octavian Kecenovici
6314 Fernwood  Avenue
Bensalem, Pennsylvania  [19020]

They were sent by United States Post Office Registered Mail number: 7018 1130 8723 2221

To: Jeffery Miller
1304 East Dexter Street
Covina, California 91724

Documents listed below:
  1.  NOTICE  AND DEMAND FOR PAYMENT                     1 pages
  2.  Notary Certificate of Mailing                             1 pages

         Total pages 2

WITNESS my hand and official seal.               WITNESS  my hand and seal, _For Octavian Kecenovici only_

(Seal)                                            (Seal)

                                                  ANTHONY HARGIS
                                                  NOTARY PUBLIC
                                                  STATE OF FLORIDA
Notary Public                                     Notary Public        Comm# GG147858
_Robert C Lucas_                                                       Expires 12/15/2021

Date  11/4/21                                     Date  11/1/2021

My commission expires:                            My commission expires:

_June   7_          , 20 _25_                      _December  15th_        , 20 _21_

Commonwealth of Pennsylvania-Notary Seal
ROBERT C LUCAS NOTARY PUBLIC
DELAWARE COUNTY
MY COMMISSION EXPIRES JUNE 7, 2025
COMMISSION NUMBER 1214971

2

5/22/22, 10:10 AM

https://mail.google.com/mail/u/0/?zx=k3uorclpc99e#search/WS/FMfcgzGlkjhFHCnpqlqoQSnbcLdGVRxF

[ServeManager] Job #6319432 Served - ikornea@gmail.com - Gmail

Compose

**Inbox**

Starred

Snoozed

Important

Sent

**Drafts**

All Mail

Categories

**Social**

**Updates**

Meet

New meeting

Join a meeting

**Hangouts**

Illia

**Mike Kane**
Sent a message

WS

## Served

Leesa Sera shared a service notification with you:

**Details**

**Recipient**

Recipient: Jeffrey Miller

Age:      62

Gender:   Male

Weight:   225

Height:   6'

Eyes:     Green

**Description of Recipient:** Tall male

**Service Address**

1304 E Dexter St, Covina, CA 91724-3226, Los Angeles

**Process Server:** Leesa Sera 201803094 6

**Date & Time:** Nov 8, 2021, 1:05 pm PST

**Service Type:** Posted

**Description of Service:**

Arrived at location knocked at the door nobody answered however I did see a tall male walking back-and-forth in f
William Sera he intern called the client we had a brief discussion and I was instructed by the client to post the env

Illia Kornea
6314 Fernwood Ave
Bensalem, PA 19020
Tel. 215-757-3327
Email: ikornea@gmail.com

May 22nd, 2022

United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Attn: Clerk of Court

Enclosed is a hard copy of the Complaint I filed electronically on May 22nd, 2022, if you have any questions, please feel free To email or call me directly.

Thank you,

Illia kornea

ea
nwood Ave
, PA 19020



7020 1810 0001 5059 3222

 

1000          10007

U.S. POSTAGE PAID
FCM LG ENV
HORSHAM, PA
19044
MAY 24 22
AMOUNT
**$9.76**
R2304E107023-05

U.S.M.P3
SDNY

UNITED STATES DISTRICT SOUTHERN DISTRICT N.Y.

500 PEARL St PRO SE INTAKE UNIT

NEW YORK, N.Y. 10007

PRO SE - NEW FILING - NEW CASE

RECEIVED
SDNY PRO SE OFFICE