UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                          :

ILLIA KORNEA, et al.,               :
                                          :
                     Plaintiffs,     :       22-CV-04454 (JAV)
                                          :
          -v-                     :      <u>OPINION AND ORDER</u>
                                          :
JEFFREY MILLER,               :
                                          :
                     Defendant.     :
-------------------------------------------------------------------X

JEANNETTE A. VARGAS, United States District Judge:

      This case raises the question of whether a federal court can adjudicate a contractual dispute regarding the allocation of proceeds from the sale of cannabis. In 2019, Plaintiffs entered into a joint venture agreement ("JVA") with Defendant with the purpose of funding marijuana transactions in California. After a few successful weeks, the joint venture fell apart. Although Plaintiffs recouped the entirety of their investment, they suspected that Defendant had actually trafficked in greater amounts of marijuana than he had disclosed to his business partners and pocketed the additional profits from the transactions. Accordingly, Plaintiffs filed suit.

      Federal law criminalizes the manufacture, distribution, and sale of marijuana. 21 U.S.C. §§ 812; 841. Yet over the past two decades, federal prosecutions related to the purchase and sale of marijuana have declined greatly. At the same time, a number of states have passed laws legalizing marijuana sale, possession, and use under state law. These developments have forced federal courts

to grapple with how to balance contradictory federal and state public policy considerations in contract disputes involving marijuana sales.

The contract at issue here seeks an unlawful end under federal law. Moreover, the only remaining claim in this case concerns the allocation of proceeds from the illegal sale of narcotics. Accordingly, the Court holds that the JVA is unenforceable as a matter of public policy and dismisses the remaining breach of contract claim.

## BACKGROUND

*Pro se* Plaintiffs Illia Kornea and Octavian Kecenovici bring this suit against *pro se* Defendant Jeffrey A. Miller regarding a JVA that they entered into along with an additional investor in April 2019. ECF No. 63 ("Am. Compl.") at 7-8. The JVA in question involved a scheme to purchase and resell marijuana. The JVA provided that Plaintiffs would invest $25,000 each into the JVA, while Defendant would contribute $7,500. ECF No. 1 at 26-29, 32 ("JVA"), ¶¶ 2, 4. The JVA contemplated that Defendant would use this money to "fund the bulk purchase of marijuana (the 'product') from licensed bulk wholesalers, on behalf of licensed distributors of the product for resale to end user retailers." *Id.* ¶ 4. The JVA set forth a formula for the distribution of profits from the completion of each sale to the end user retailer, called "flips." *Id.* ¶¶ 4-6. Magistrate Judge Katharine H. Parker summarized the contract as follows: "if Defendant used a $75,000 initial investment to purchase marijuana for the first flip, Defendant would re-sell that marijuana for approximately $99,375, generating a total profit of $24,375" per flip. ECF No. 109 ("R&R") at 4.

In connection with the summary judgment motion, the undisputed factual record reflected that, in April and May 2019, Defendant informed Plaintiffs that he had conducted three successful flips; he subsequently distributed $3,750 to each investor, including Plaintiffs, in profit. *Id*. at 6. In May 2019, Defendant claimed in an email to Plaintiffs to have earned as much as $40,000 from these transactions. *Id*. at 7.

Defendant transferred $30,000 in profits to Plaintiffs from the May flips. *Id*. at 7-8. But Defendant communicated to Plaintiffs that the "weed buys [were] slowing down," and he was contemplating a new business model. *Id*. at 8. The JVA was terminated in June 2019, and Defendant indicated he would pay out the initial investment to each Plaintiff as well additional profit of between $6,000 to $8,000. *Id*. at 9-10. Between February 2020 and May 2022, Defendant sent payments to Plaintiffs totaling $13,650. *Id*. at 11. The record reflects that Defendant has paid Plaintiffs more than their initial investment of $50,000. *Id.*

## PROCEDURAL HISTORY

Plaintiffs sued for breach of contract, bad faith, and unethical business practices under California and New York state law. Am. Compl. at 7-8. Plaintiffs asserted claims arising under the New York and California Commercial Codes and consumer protection laws, as well as foreclosure on an agricultural lien. *Id*. at 8-9. Plaintiffs sought relief that included payment in full of profits they alleged are owed to them by the Defendant. *Id*. at 9.

Defendant filed a motion for summary judgment on July 27, 2023. ECF No. 91. This motion was referred to Magistrate Judge Parker for issuance of a Report and Recommendation. ECF No. 96. Magistrate Judge Parker determined that Plaintiffs had not adduced evidence sufficient to create a disputed issue of material fact as to the majority of claims asserted in the complaint. R&R at *passim*. With respect to the breach of contract claim, the Magistrate Judge, after conducting an exhaustive review of the record, determined that there was sufficient evidence to create a disputed issue of fact as to whether Defendant had distributed to Plaintiffs all profits earned from marijuana transactions conducted in May and June 2019. R&R at 18-19. Magistrate Judge Parker therefore recommended that the Court grant summary judgment to Defendant as to all claims, other than the discrete claim for breach of contract for the period between May and June 2019. *Id.* at 31. The Court adopted the Report and Recommendation in its entirety. ECF No. 121.

On December 18, 2024, the case was reassigned to the undersigned. Following a conference to discuss scheduling trial with respect to the remaining breach of contract claim, the Court raised *sua sponte* the issue of whether, the sale of marijuana being illegal under federal law, the Court was being asked to enforce an illegal contract. ECF No. 137 at 2. The Court ordered Plaintiffs to show cause why the remaining breach of contract claim should not be dismissed on the grounds that the JVA is an illegal contract. *Id.*

Plaintiffs filed several documents in response to the Order to Show Cause. *See* ECF No. 140 ("Pl. Aff."); ECF No. 141. Plaintiffs claim that the contract can be

enforced because they were passive investors and are requesting relief in the form of payment for funds alleged to be already earned, which would not require future actions that would violate federal law.  Pl. Aff. at 5.  In addition, Plaintiffs claim they are entitled to relief, even if the contract is illegal, under theories of restitution and constructive trust.  *Id.*

## LEGAL STANDARD

It is well established "that a federal court has a duty to determine whether a contract violates federal law before enforcing it.  The power of the federal courts to enforce the terms of private agreements is at all times exercised subject to the restrictions and limitations of the public policy of the United States as manifested in federal statutes.  Where the enforcement of private agreements would be violative of that policy, it is the obligation of courts to refrain from such exertions of judicial power."  *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83-84 (1982); *see also Dervin Corp. v. Banco Bilbao Vizcaya Argentaria, S.A.*, No. 03-CV-9141 (PKL), 2004 WL 1933621, at *3 (S.D.N.Y. Aug. 30, 2004) ("A federal court has a duty to determine whether a contract violates federal law before enforcing it.").  The illegality of a contract is an issue that the Court can raise *sua sponte*, and "cannot be waived by the parties."  *Nyhus v. Travel Mgmt. Corp.*, 466 F.2d 440, 447 (D.C. Cir. 1972).

Enforcement of a contract is plainly prohibited if it "would require directing the precise conduct that a statute or regulation makes unlawful."  *Dervin Corp.*, 2004 WL 1933621, at *3.  And if "'a statute directly prohibits an agreement or sale,

it is clear that the courts will not lend their aid to any attempt by the parties to enforce the agreement.'" *Id.* (quoting 8 Williston on Contracts § 19:41 (4th ed. 1993)).

"The fact that a contract offends a federal statute or regulation does not, however, automatically render it void or unenforceable." *Id.* "If a contract is merely collaterally and not directly connected with the illegal act, the contract will be valid and enforceable." *Wechsler v. Hunt Health Sys., Ltd.*, 216 F. Supp. 2d 347, 354 (S.D.N.Y. 2002). Federal courts can also consider "if the interest in enforcement clearly outweighs the public policy against enforcement." *Resol. Tr. Corp. v. Home Sav. of Am.*, 946 F.2d 93, 97 (8th Cir. 1991) (refusing to enforce contract that directly implicated concerns prompting the regulatory prohibition on sales without recourse).[1]

---

[1] "The effect of illegality under a federal statute is a matter of federal law, even in diversity actions in the federal courts." *Kelly v. Kosuga,* 358 U.S. 516, 519 (1959) (citation omitted). Notwithstanding the Supreme Court's command in *Kelly*, some courts have looked to state law in contract disputes arising under the court's diversity jurisdiction to determine whether to enforce a contract. *See, e.g., Bassidji v. Goe*, 413 F.3d 928, 936 (9th Cir. 2005) (noting dispute and citing cases).

In this case, New York law governs the interpretation of the JVA under its choice of law provision. JVA, ¶ 13. And illegal contracts are similarly unenforceable under New York law. *See Schlessinger v. Valspar Corp.*, 686 F.3d 81, 85 (2d Cir. 2012) ("As a general rule, New York courts will not enforce illegal contracts."). New York courts find that an illegal contract is one that requests the court's enforcement of its "illegal object." *Stone v. Freeman*, 82 N.E.2d 571, 572 (N.Y. 1948).

Under New York law, an exception is made for contracts that violate statutes that are regulatory in nature. Such contracts may be enforceable if "(1) the statutory violation is *malum prohibitum*; (2) the statute that renders the contract illegal does not specifically require that all contrary contracts be rendered null and void; and (3) the penalty imposed by voiding the contract is wholly out of proportion to the requirements of public policy." *Schlessinger*, 686 F.3d at 85 (citing *Benjamin v. Koeppel*, 650 N.E.2d 829, 830 (N.Y. 1995)). Under the first prong of this test,

## DISCUSSION

The Court finds that the JVA is an illegal contract, as it has as its object transactions that constitute criminal offenses under federal law. The contract cannot be enforced without violating public policy.

## I.    The JVA Is an Illegal Contract Under Federal Law

The Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801 et seq., "creates a comprehensive, closed regulatory regime criminalizing the unauthorized manufacture, distribution, dispensing, and possession of substances classified in any of the Act's five schedules." *United States v. Canori*, 737 F.3d 181, 182 (2d Cir. 2013). Schedule I "contains the most severe restrictions on use, the violation of which may result in criminal penalties." *Id.* Marijuana is classified as a Schedule I drug under the CSA, making it illegal to distribute or dispense. 21 U.S.C. §§ 812; 841. Conspiracy to distribute or dispense marijuana is also illegal under federal law. 21 U.S.C. § 846.

Over the past two decades, numerous states have legalized marijuana for medicinal and recreational purposes. The growing trend of decriminalizing marijuana at the state level has led to an evolution of federal public policy in this area. For example, in 2009, Deputy U.S. Attorney General David Ogden issued a memorandum advising federal prosecutors that they should not use resources to prosecute individuals "whose actions are in clear and unambiguous compliance with

---

courts consider whether the statute looks beyond the question of revenue and has for its purpose "the protection of public health or morals or the prevention of fraud." *Id.* (quoting *Benjamin*, 650 N.E.2d at 831). The Court notes that its analysis of this issue would therefore remain unchanged even were it to apply state law.

existing state laws providing for the medical use of marijuana." David W. Ogden,

U.S. Dept. of Justice, Investigations and Prosecutions in States Authorizing the

Medical Use of Marijuana (2009),

https://www.justice.gov/archive/opa/documents/medical-marijuana.pdf.    In the past

decade, Congress has passed several appropriation bills that prohibit the

Department of Justice from using appropriated funding "for the prosecution of

individuals who engaged in conduct permitted by the State Medical Marijuana

Laws and who fully complied with such laws."  *United States v. McIntosh*, 833 F.3d

1163, 1177 (9th Cir. 2016) (citing Consolidated Appropriations Act, 2016, Pub. L.

No. 114-113 § 542, 129 Stat. 2242, 2332-33 (2015).  There have also been a number

of attempts to reschedule marijuana under the CSA, including pending

consideration of proposed rulemaking in this area.  *See, e.g.*, Schedules of Controlled

Substances: Rescheduling of Marijuana, 89 Fed. Reg. 44597 (2024).

        Yet there has been no change in the CSA schedule as of the time of this

Opinion.  And both the Second Circuit and the Supreme Court have repeatedly

confirmed that, notwithstanding local legalization efforts, marijuana sale and

distribution remains criminalized at the federal level.  *See, e.g.*, *Gonzales v. Raich*,

545 U.S. 1, 33 (2005); *United States v. Amalfi*, 47 F.4th 114, 123 (2d Cir. 2022);

*Canori*, 737 F.3d at 184 ("Marijuana remains illegal under federal law, even in

those states in which medical marijuana has been legalized.").  These precedents

and the CSA bind this Court.

The JVA has as its object the sale and distribution of marijuana, acts which are illegal under federal law. The object of the JVA being illegal under federal law, the Court cannot enforce its terms. "Even where conduct may be legal under state law and enforceable by a state court, federal courts sitting in diversity have held that contracts that violate the federal marijuana laws are not enforceable by a federal court." *1240 S. Bannock, LLC v. Siem*, No. 2:21-CV-00183, 2022 WL 2161386, at *5 (W.D. Mich. May 27, 2022), *report and recommendation adopted*, No. 2:21-CV-183, 2022 WL 2158384 (W.D. Mich. June 15, 2022); *see also CCH Acquisitions, LLC v. J&J&D Holdings, LLC*, No. 2:23-CV-2983, 2025 WL 601249, at *5 (S.D. Ohio Feb. 25, 2025) (refusing to grant damages for breach of contract involving the purchase of marijuana business, as to do so would "give legal effect to the parties' illegal acts and enforce their unlawful agreement" (cleaned up)); *J. Lilly, LLC v. Clearspan Fabric Structures Int'l, Inc.*, No. 3:18-CV-01104-HZ, 2020 WL 1855190, at *11 (D. Or. Apr. 13, 2020) (holding that Court could not award "compensation for profits that it would have earned from the manufacture, distribution, or dispensation of marijuana but for Defendants' breach of contract, breach of warranty, and negligence"); *cf. Ricatto v. M3 Innovations Unlimited, Inc.*, No. 18-CV-8404 (KPF), 2019 WL 6681558 at *5 n.4 (S.D.N.Y. Dec. 6, 2019) ("Had the [contract] obligated Defendants to develop land for the cultivation of marijuana, enforcement of the contract might well put the Court in the position of directing Defendants to violate federal law. . . If enforcement of the contract would require an illegal action, the contract would be unenforceable.").

## II.    Equitable Remedies Are Unavailable

Notwithstanding the illegality of the contract, Plaintiffs insist that their claim to recover lost profits can still survive because they "are not seeking enforcement of any specific cannabis activity, but rather equitable restitution of funds wrongfully withheld and an accounting of all profits derived from [their] investment." Pl. Aff. at 5. The implication of their argument appears to be that, since the criminal activity at issue has concluded and no future cannabis-related transactions are contemplated, the Court's involvement in dividing up the illegally-obtained profits would not involve the Court in enforcement of an illegal contract.

This argument obviously suffers from a number of flaws. First, as a procedural matter, Plaintiffs did not bring a claim for equitable restitution in the Amended Complaint. ECF No. 63. The only remaining claim in this case seeks a legal remedy: monetary damages resulting from a breach of contract. *See, e.g.*, *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) ("A claim for money due and owing under a contract is quintessentially an action at law." (cleaned up)).

Second, even if Plaintiffs had brought a claim for equitable relief, it would fare no better than the breach of contract claim. The "investment" they are referring to is the provision of funds for buying and selling bulk quantities of cannabis. Plaintiffs are not seeking to recover money that was unjustly taken from them but rather are seeking to enrich themselves from marijuana sales that are

illegal under the CSA.[2]  Plaintiffs cannot come to court with unclean hands and seek as equitable relief the proceeds from their criminal acts.  *Valentine v. Metro. Life Ins. Co.,* No. 85-3006 (CSH), 2004 WL 2496074, at *4 (S.D.N.Y. Nov. 4, 2004) ("[A] judge may raise the unclean hands doctrine *sua sponte*.").

The very case relied upon by Plaintiffs, *Bart St. III v. ACC Enters., LLC*, No. 17-CV-00083 (GMN) (VCF), 2020 WL 1638329 (D. Nev. Apr. 1, 2020), demonstrates this point.  In *Bart St. III,* the plaintiff brought claims for both breach of contract and unjust enrichment arising from a loan agreement to finance a marijuana cultivation business.  The court held that a provision of the contract granting a right of first refusal to the business was unenforceable because it "would have allowed Plaintiff to profit from the sale of marijuana," while an "operating capital provision provided direct assistance to Defendants' cultivation of marijuana" and was similarly unlawful.  *Id.* at *2.  The court reserved decision, however, on whether those provisions were severable from the loan agreement.  *Id.* at *7-*8. The plaintiff argued in the alternative that summary judgment should be granted on the unjust enrichment claim.  The court rejected this argument, holding that if

---

[2]  Even if Plaintiffs had not already recovered the money they provided to Defendant, it is doubtful they could rely on equitable principles to seek the return of their original investment.  As the New York Court of Appeals has recognized, "no court should be required to serve as paymaster of the wages of crime . . . Therefore, the law will not extend its aid to either of the parties or listen to their complaints against each other, but will leave them where their own acts have placed them. Conforming to that settled rule, this court and its predecessor have several times held that when an agent receives money to be spent for illegal purposes, his principal may not recover back so much of that money as the agent has failed so to spend, particularly when the illegal purpose has been partly or wholly attained and a part of the money expended therefor."  *Stone*, 82 N.E.2d at 572-73 (cleaned up).

the contract were determined to be illegal, then equitable remedies would be prohibited by the unclean hands doctrine. *Id.* at *9. The court explained, "generally, a party cannot recover for unjust enrichment based upon an illegal agreement because no court should be required to serve as paymaster of the wages of a crime." *Id.* at *8 (cleaned up). The court further found that conspiring to cultivate marijuana involves a crime of moral turpitude, notwithstanding its legality under state law. *Id.* "The Court may not provide Plaintiff an equitable remedy that would allow Plaintiff to circumvent federal criminal law in order to recover the proceeds of its crime." *Id.* at *9.

Plaintiffs also cite *Mann v. Gullickson*, No. 15-CV-03630-MEJ, 2016 WL 6473215, at *7 (N.D. Cal. Nov. 2, 2016), for the proposition that "courts have made clear distinctions between enforcing illegal contracts and granting equitable remedies." ECF No. 141 at ¶ 5. *Mann* is distinguishable from the instant case. At issue in *Mann* was a transaction involving the sale of two businesses—a website business that assisted companies in obtaining medical marijuana licenses in California, and a consultancy service that advised customers on hydroponic farming. 2016 WL 6473215 at *2. After the defendant failed to pay on the resulting note, the plaintiff filed suit. *Id.* Defendant argued that the contract was illegal under the CSA and could not be enforced. *Id.*

The *Mann* court, applying California law, held that "even where contracts concern illegal objects, where it is possible for a court to enforce a contract in a way that does not require illegal conduct, the court is not barred from according such

relief." *Id*. at *7.  The court reasoned that California courts generally "adhere[] to the well-settled rule that the courts will not aid a party whose claim for relief rests on an illegal transaction, . . . based on the rationale that the public importance of discouraging such prohibited transactions outweighs equitable considerations of possible injustice between the parties." *Id*. at *6 (cleaned up).  But the court concluded that equitable considerations can permit enforcement of an illegal contract depending "upon a variety of factors, including the policy of the transgressed law, the kind of illegality and the particular facts." *Id*.

Applying that test, the court in *Mann* denied the motion to dismiss.  The court concluded that it would be inequitable to permit the plaintiff to maintain ownership of the businesses while avoiding making full payment of the purchase price. *Id*. at *8.  In doing so, however, the court specifically found that the businesses were not themselves involved in the cultivation or distribution of marijuana, and that enforcing the contract thus would not require either party to violate the CSA. *Id*. at *7.  The court emphasized that "enforcing the contract in this case is not endorsing the cultivation, possession, or distribution of marijuana. It is not making broad pronouncements about that any and all contracts related to marijuana or medical marijuana will be enforceable." *Id*. at *8.

The instant case stands in stark contrast with *Mann*.  Unlike in *Mann*, where the business was only collaterally related to the medical marijuana industry, the JVA here has as its object the unlawful purchase and sale of cannabis in bulk quantities.  And the dispute here does not concern payment in exchange for

property or businesses that could be used for legal purposes, but the distribution of profits from the sale of cannabis. The Court cannot use its judicial power to divide the profits amongst those jointly engaged in narcotics trafficking without implicitly placing its imprimatur on the illegal conduct itself. *See McMullen v. Hoffman*, 174 U.S. 639, 660 (1899) ("In the case before us the cause of action grows directly out of the illegal contract, and, if the court distributes the profits, it enforces the contract, which is illegal.").

The Second Circuit has made clear that rights in or arising out of illegal partnerships cannot be recognized by federal courts. "An alleged partnership founded upon an illegal basis or one contrary to public policy cannot be used to establish any rights of the parties involved as parties. Moreover, if the purpose or subject matter of a partnership contract is illegal or against public policy, the contract may be held to be void." *United States v. Bonanno Organized Crime Fam. of La Cosa Nostra*, 879 F.2d 20, 28 (2d Cir. 1989).

For example, in *Rutkin v. Reinfeld*, 229 F.2d 248 (2d Cir. 1956), the Second Circuit overturned a damages award resulting from alleged fraud in the sale of a distillery in Canada. The Court held that, because the partnership arrangement underlying the claim was formed to operate a bootlegging operation, conducted during a time when the prohibition laws prohibited the importation of alcohol, no claims arising from the partnership could be asserted in court. *Id.* at 254-56. "A member of such an illegal partnership is not entitled to enforcement of any right depending on the partnership agreement." *Id.* at 256.

The Court recognizes that a rule that prohibits state-licensed commercial cannabis operations from having recourse to federal courts to enforce the myriad of contracts required to operate in good faith under state law, from leases to insurance policies to purchase agreements, could raise equitable concerns. But those concerns are not present in the instant case. Neither Plaintiffs nor Defendant were properly licensed under state law to purchase or sell marijuana. It therefore seems likely that the JVA, and the transactions contemplated by it, violated both New York and California public policy as well as federal law.[3]

Both states have legalized marijuana for recreational use. NY CANBS § 2; Cal. Health & Safety Code § 11362.1. Yet the industries are strictly regulated in each state. New York state law requires licenses for the sale of marijuana. NY CANBS § 10. Failure to comply is a criminal punishment, with second degree sale of more than sixteen ounces being a Class E felony. N.Y. Penal Law § 222.55. California also requires licenses to sell marijuana under state law, with violations potentially resulting in criminal penalties. Cal. Health & Safety Code § 11360.

Defendant purchased the marijuana from third parties that were licensed to sell marijuana, and purportedly sold the marijuana to end-use retailers that also were licensed to sell marijuana. But Defendant admits that he himself did not have a license to sell cannabis in California. ECF No. 65 ¶ 59.[4] The JVA therefore also violated state public policy.

---

[3] The Court looks to both New York and the California law concerning cannabis sales, given that the JVA is governed by New York law, and the purchase and sales of the cannabis took place in California.
[4] Defendant seems to suggest that his sale of marijuana in California may have

### III.    Plaintiffs' Motion for Sanctions is Denied

Plaintiffs have also brought a motion for sanctions against Defendant, in which they contend 1) Defendant committed perjury in his submissions to the Court as "evidence shows that the JVA generated over $530,000 in total proceeds"; 2) Defendant failed to comply with the Court's order at Docket Entry No. 1, which required Defendant to make a "payment bond"; and 3) Defendant violated professional conduct rules.  ECF No. 142 at 2-3.  The motion for sanctions is denied.

As to the charge of perjury, the Report and Recommendation exhaustively reviewed the record and determined that there was no evidence that the JVA generated that level of profit.  R&R at 21-24.  Docket Entry No. 1 is the complaint filed by Plaintiffs, not a court order.  And Defendant is a *pro se* litigant in this Court.  He is disbarred and not appearing before this Court as an attorney. Moreover, he does not represent Plaintiffs and thus cannot be sanctioned for "failing to inform the client of material developments in the case."  ECF No. 142 at 3.

---

been lawful under state law because he had "access" to a "third party that was licensed under California law to do business in the cannabis industry in the state of California."  ECF No. 65 ¶ 59.  Whether under California law an unlicensed individual could lawfully engage in bulk marijuana transactions using a licensed individual as a conduit is not an issue that needs to be resolved for purposes of this decision.

## CONCLUSION

For the foregoing reasons, Plaintiffs' breach of contract claim against Defendant is hereby dismissed.  As summary judgment has previously been granted with respect to all other claims and counterclaims in this case, ECF Nos. 121, 125, the Clerk of Court is directed to close the case and terminate all pending motions.

SO ORDERED.

Dated:  August 11, 2025
        New York, New York

_____
JEANNETTE A. VARGAS
United States District Judge